# M. J. IRVIN v. JOHN IRVIN.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 21, 1891—Decided May 4, 1891.

[To be reported.]

(a) By a contract under seal the defendant, in consideration of certain things to be done by the plaintiff, a married woman, covenanted to pay her six thousand dollars, four thousand dollars of that sum to be secured by a promissory note, with an approved indorser, to be delivered to plaintiff's attorneys " as custodians for the parties."

(b) Accordingly, a note drawn to the order of a third person, and indorsed by the payee in blank, was delivered to plaintiff's attorneys. Plaintiff performed her covenants specified in the written contract, but the note

142 271
169 541
142 271
194 133

142 271
19 SC 475

142 271
23 SC 436

142 271
27 SC 378

was never delivered to her. In an action for the amount thereof, she called one of said attorneys to prove and identify the note:

1. It was error to permit the witness to testify, on cross-examination and under objection, that, by a contemporaneous parol stipulation, intentionally omitted from the written contract, the plaintiff agreed, as part of the consideration of the note, that she would secure a divorce from her husband, and should not receive the note until then.

2. Such testimony, if admissible at all, was so only by way of defence as part of the defendant's case; and, therefore, the alleged oral agreement being denied by the plaintiff, it was error to direct a verdict for the defendant, on the ground that the plaintiff's case exhibited a transaction tainted with illegality.

3. Whether the testimony would have been admissible at any time or for any purpose, doubted: "I know of no decided case, and no principle of law, which permits an oral contract, made at the same time with a written contract under seal, and purposely omitted therefrom, to be set up, not only to contradict, but to destroy it: "Per Mr. Chief Justice PAXSON.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 53 January Term 1891, Sup. Ct.; court below, No. 163 February Term 1890, C. P.

On December 31, 1889, Martha Jane Irvin brought assumpsit against John Irvin. By amendment at the trial, James A. Irvin, plaintiff's husband, was added as a party, so as to make the action stand in the names of James A. Irvin and Martha Jane Irvin his wife, in right of said Martha Jane, v. John Irvin. The plaintiff's statement of claim, as amended, set out a contract by which the defendant stipulated to pay to Martha Jane Irvin, $6,000, in consideration of certain things to be done by her, and in the following payments: $1,000 in hand, $1,000 upon delivery of a certain deed, and the remaining $4,000 on November 1, 1885, for which latter sum he was to deliver to her attorneys, Murray & Gordon, as custodians for the parties, a promissory note with an approved indorser. The statement of claim then set out a note for $4,000, dated October 8, 1884, drawn by the defendant to the order of Annie M. Irvin and by her indorsed in blank, and averred that the same was delivered in pursuance of said contract to Murray & Gordon, acting as attorneys for Martha Jane Irvin in reference to the subject-matter of said contract, and that the said note remained due and unpaid, etc. Issue.

At the trial, on September 21, 1890, the plaintiff put in evidence the contract mentioned in the statement of claim, after proving the execution thereof by the testimony of Mr. Cyrus Gordon, the subscribing witness thereto. Said contract was in the following words:

"Agreement made and entered into this eleventh day of September, 1884, between Martha Jane Irvin, wife of James A. Irvin, of the borough of Curwensville, of the first part, and John Irvin, of the same place, of the second part, witnesseth as follows:

" 1. Said Martha Jane Irvin agrees to forthwith execute and deliver to said John Irvin, a quit-claim deed such as he may procure, conveying all her right, title, and interest of every kind in a tract of land in Burnside township, Clearfield county, Pennsylvania, known as the Elk Lick tract; and within twenty days from the date hereof, execute and deliver to said John Irvin, or any person he may name, a deed to be by him prepared conveying all her right, title, and interest of every kind in all the remaining real estate owned by said James A. Irvin, wheresoever situated, and personal property and assets which he may own or be interested in, excepting only the personal property in and about the house in which she now resides.

" 2. She agrees to surrender up and deliver possession of the premises in which she now lives, without notice to quit, on or before December 1, 1884.

" 3. She agrees within twenty days from this date to discontinue the equity suit pending in the court of Clearfield county, Pennsylvania, to No. 1 September Term 1883, against the said James A. Irvin and others.

" 4. In consideration of the foregoing, said John Irvin agrees and binds himself to pay to said Martha Jane Irvin the sum of six thousand dollars, as follows: One thousand dollars in hand; one thousand dollars on delivery of second deed within contemplated, to be made within twenty days; and the remaining four thousand dollars on November 1, 1885, for which he is to give, on the delivery of said second deed, a negotiable promissory note with an indorser such as Murray & Gordon, her attorneys, may approve; said note to be with interest from December 1, 1884; the same to be delivered to said Murray & Gordon, as custodians for the parties hereto. Further, he agrees to pay to

said Martha Jane Irvin, the sum of three dollars per week, from the date hereof, until December 1, 1884. He also agrees, on the discontinuance of said equity suit, to pay all docket costs thereon, including the printing of paper-book of plaintiff, but not to include any costs for witnesses or for subpœnaing the same.

"5. He agrees to procure to said Martha Jane Irvin, within said twenty days, the transfer of the title to the personal property now in her possession, and herein reserved.

"6. Said Martha Jane Irvin agrees that in any proceeding she may institute against her husband for divorce, she will not assign any other reason therefor than the desertion of her by her husband.

"Witness our hands and seals the date aforesaid.

"Witness:          "MARTHA JANE IRVIN    [SEAL]
"CYRUS GORDON.       "JOHN IRVIN           [SEAL]"

"Received Clearfield, Pa., 11th September, 1884, of John Irvin, one thousand dollars the hand money within mentioned.

"$1,000.              MARTHA JANE IRVIN."

"Witness:

"CYRUS GORDON."

Having shown the execution and delivery by the plaintiff of the deeds stipulated for in the contract, the surrender of possession of the premises mentioned in the second stipulation of the contract, and the discontinuance of the equity proceedings mentioned in the succeeding stipulation, the plaintiff recalled Mr. Gordon, who produced a note for $4,000, of the tenor of that set out in the statement of claim, and testified that it was the note referred to in the written contract between the plaintiff and the defendant, and delivered to Murray & Gordon in pursuance of said contract. On cross-examination, the witness was asked the following question by defendant's counsel:

"Q. State what was to be done with that note, under the agreement made between these parties on the eleventh day of September, 1884?"

The question was objected to: "(1) Because it is not proper cross-examination. (2) It is an attempt upon cross-examination to introduce parol testimony for the purpose of proving other considerations than are named in the agreement, which considerations, as set out in the affidavit of defence of the defendants,

are illegal; and where a legal consideration is expressed in a
written agreement, parol evidence is not admissible to prove
and couple an illegal consideration therewith, for the purpose
of defeating recovery for the debt named in the written agree-
ment. (3) Where the illegal consideration alleged does not
appear on the face of the writing, but is interposed by way of
defence by the obligor, he becomes the actor, and the doctrine
in pari delicto applies against him, and not in his favor."

By the court: Inasmuch as the contract of the eleventh of
September, 1884, provides that a note of $4,000 shall be deliv-
ered to Murray & Gordon, in these words: "The same to be
delivered to Murray & Gordon as custodians for the parties
hereto," or John Irvin and Martha Jane Irvin, the parties to
said contract, we are of the opinion that until it is shown that
the conditions of the contract have been complied with, whether
expressed in the contract or contemporaneous therewith, which
may be inferred, the legal owner of this note, the defendant,
has a right to cross-examine and see what these conditions
were, whether or not they are illegal or void, as against the
policy of the law, as I understand the law, which cannot be
determined at this time. We cannot know what they are un-
til we hear them. Objections overruled and offer admitted,
reserving for our future consideration the question of the valid-
ity or legality of what the consideration may be on the parol
contract, the question itself not disclosing whether there was
any illegal consideration or any illegal condition attached to
the delivery of this note; exception.[1]

Mr. Peale: My colleague suggests as additional objections:
"(4) That the question is vague and indefinite, in that it is not
limited to the written agreement of the eleventh of September,
1884. (5) That the relations of client and attorney existed
between Murray & Gordon and Martha Jane Irvin, the plaint-
iff, and they are not at liberty to testify to a privileged matter."

By the court: Just ask the question.

The question was again read to the witness.

"A. Well, it was left with us as custodians, and was to be
held by us until the terms of the contract between them were
complied with; among which were that she was to procure a
divorce from her husband, provided he made no defence to it,
or did not prevent her from procuring it."

Statement of Facts.

Mr. Orvis : " Was that a part of the agreement made on the eleventh of September, 1884 ? "

Mr. Peale : " We object to that."

By the court: Objection overruled, evidence admitted; exception.[2]

" A. It was.'

The witness testified, further, on cross-examination, under the plaintiff's objection and exception, that the negotiations preceding the making of the contract of September 11, 1884, were conducted on behalf of Mrs. Irvin by Murray & Gordon, as her attorneys, and she did not come into personal contact therein with the defendant or his attorneys; that what was done by Murray & Gordon in her behalf was done by her authority previously obtained, and was afterwards communicated to her; that the stipulation for the procuring of a divorce by the plaintiff was omitted from the written contract because the defendant's attorney objected to its insertion therein; that, at the time the contract was made, it was agreed that Murray & Gordon, upon receiving the $4,000 note from the defendant, should give a receipt for it, drawn according to a form prepared at the date of the contract, and such a receipt was given when the note was delivered to them. The witness identified the original draft of the form of the receipt to be given for the note, and the receipt afterward given for it. He testified, also, that Mrs. Irvin, after commencing proceedings for a divorce refused to proceed with their prosecution.

The plaintiff then put in evidence the note produced by Mr. Gordon, and rested.

The defendants offered in evidence the receipt identified by Mr. Gordon, reading as follows :

" This is to certify that we have this day had and received from John Irvin his negotiable promissory note, dated October 8, 1884, for four thousand dollars, with interest from December 1, 1884, indorsed by Annie M. Irvin, the same being received by us and delivered to us as custodians, in pursuance of an arrangement made September 11, 1884, when a certain agreement was made between Martha Jane Irvin, wife of James A. Irvin, and said John Irvin, by which we are to hold the same until such time as said Martha Jane Irvin shall have procured a divorce from the bonds of matrimony, without alimony, from

Statement of Facts.

her said husband, and not to deliver the same to said Martha Jane Irvin until said divorce shall be obtained; provided, that her procuring or obtaining said divorce is not hindered, or delayed, or defended against by said James A. Irvin, and she, after proper exercise on her part, be prevented from obtaining it prior to November 1, 1885.

" Witness our hands, this 24th April, 1885.

" MURRAY & GORDON."

" Witness:

" J. F. SNYDER."

The offer of the receipt was objected to.

By the court: This receipt being part of the res gestæ, and connected with this note, we think it is a fact which will appear from the record whether or not it is sufficient to defeat plaintiff's right to recover, which would depend upon our understanding of the law, and we therefore overrule the objection and admit the offer; exception.[6]

The defendant put in evidence the record of a proceeding to obtain a divorce, commenced by Mrs. Irvin on September 13, 1884, showing that a commissioner to take testimony was appointed on February 28, 1885, and that nothing was done in the case thereafter. Mr. Thomas H. Murray, of the firm of Murray & Gordon, testified under objection, to the same effect, in substance, as the testimony of Mr. Gordon.

In rebuttal, the plaintiff, Mrs. Irvin, testified that at the time she signed the contract of September 11, 1884, she was not aware that her attorneys had made an agreement that she should obtain a divorce, and that she never authorized the making of such agreement; that, shortly after she filed her petition for a divorce, her husband returned to her and they then lived together until November, 1889. On cross-examination, she was shown a paper and identified her signature as appended thereto. The paper read as follows:

" And now, Clearfield, Pa., March 28, 1885. This is to certify that after having considered the propriety of carrying out the arrangement in writing made with John Irvin in September last, and after consulting with my friends and other counsel, I have definitely determined to carry out the same; and hereby authorize my said attorneys, Murray & Gordon, to discontinue the equity suit, proceed forthwith with the divorce

Charge of Court below.

case, and in all respects carry out the agreement according to its tenor and effect.      " MARTHA JANE IRVIN."

The defendant offered this paper in evidence, in connection with the cross-examination of Mrs. Irvin.

Objected to.

By the court : Objection overruled ; exception.[1]

The testimony being closed, the court KREBS, P. J., after reciting the contract referred to, and other facts in evidence, charged the jury as follows :

Now, gentlemen of the jury, it is alleged, and there is no evidence in this case which tends to contradict that testimony, that at the time this contract was entered into, a part of the agreement—not stipulated in writing—made by the counsel for Martha Jane Irvin, was that she should begin her proceedings to obtain a divorce from her husband on the ground of desertion; that the note of four thousand dollars was to be deposited by John Irvin with Murray & Gordon as custodians for the parties to this contract,—that is, for Martha Jane Irvin and John Irvin; but there is no stipulation or agreement anywhere in the contract that it should ever be delivered to her; therefore it was necessary, in the opinion of the court, to resort to the parol testimony that was offered here to show when this note was to be delivered. That brought up the question as to what the additional consideration for this note was ; and the testimony, undisputed so far as there is any testimony in this case, is that the consideration for this note was that Martha Jane Irvin should institute proceedings to obtain a divorce from her husband on the ground of desertion. The contract provides: " 6. Said Martha Jane Irvin agrees that in any proceeding she may institute against her husband for divorce, she will not assign any other reason therefor than the desertion of her by her husband."

—The court then read the form of receipt, to be given by Murray & Gordon for the note, prepared at the date of the contract between the plaintiff and the defendant, and continued :

The undisputed testimony is that this paper, this memorandum, was prepared by the counsel for the respective parties, at the time when this agreement of September 11, 1884, was

Charge of Court below.

entered into.   The testimony of Mr. Gordon, who was called
by the plaintiff as a witness in this case, is that the fact that
this note was to be held by them, Murray & Gordon, as custo-
dians for the two parties, until she procured a divorce, was
communicated to Martha Jane Irvin.   He is called as her wit-
ness, and she cannot discredit him; but her testimony does not
tend to that, and therefore we have taken the question of fact,
that it is alleged is raised in this case, away from the jury, so
that there are no facts in dispute in this case that can have any
bearing or change the relations of the parties to this transaction.
She, Martha Jane Irvin, testified that she did not know that,
until the evening of the day this paper was executed.   Whether
it was a half day, a whole day, or immediately afterwards we
are left entirely in ignorance, but it was the same night, and
assuming that her testimony was true, it does not, in our opin-
ion, change the relations of the parties to this transaction in
any manner.

Now, gentlemen of the jury, a receipt in substance embody-
ing what was then agreed upon was afterwards executed, and
the second deed was delivered, and this note was put into
the hands of Murray & Gordon as custodians for the parties.
Subsequently on March 28, 1885, prior to the time when the
note was delivered to Murray & Gordon, and prior to the time
when the second deed was executed, the plaintiff signed a paper
in writing in this language:

" And now, Clearfield, Pa., March 28, 1885.   This is to cer-
tify that after having considered the propriety of carrying out
the arrangement in writing made with John Irvin in September
last, and after consulting with my friends and other counsel,
I have definitely determined to carry out the same and hereby
authorize my said attorneys, Murray & Gordon, to discontinue
the equity suit, proceed forthwith with the divorce case, and
in all respects carry out the agreement according to its tenor
and effect.                          MARTHA JANE IRVIN."

Now, gentlemen of the jury, these papers to which I have
referred and the testimony of Messrs. Murray & Gordon as
to the transaction with reference to the delivery of the note
into their custody, and that part of the arrangement not em-
bodied in the written contract, constitute the entire facts in
this case.   [Under this testimony and the arrangement and

Charge of Court below.

agreement that Martha Jane Irvin was to procure a divorce from her husband, the note is rendered null and void in her hands, or in the hands of Murray & Gordon, and no action can be maintained upon it.] [30]

It would be contrary to public policy, and in my judgment would be of such a character that no court can enforce it; therefore, [I say to you that the plaintiff in this case is not entitled to recover under the facts in this case, as they have been stated both from the bench and by the witnesses when upon the stand.] [31]

We come now to the propositions which have been submitted to us in writing.

The plaintiff's points are as follows:

1. Where a legal consideration is expressed in a written instrument, as in this case, parol evidence is not admissible to prove and couple an illegal consideration therewith, for the purpose of defeating recovery of the debt named in said written instrument.

Answer: We do not so understand the law, and we refuse this point.[13]

2. Where the fraudulent or illegal matter does not appear on the face of the writing, but is interposed by way of defence by the obligor, he becomes the actor, and the maxim, In pari delicto, etc., applies against him and not in his favor.

Answer: We do not think the authorities cited in this case, or the principle there referred to, has any application to the case in hand, and therefore we refused this point.

3. It being the uncontradicted testimony in this case that the plaintiff executed the deeds, and otherwise complied substantially with the legal consideration expressed in the agreement of September 11, 1884, the defendant is estopped from proving by parol another and illegal consideration, for the purpose of defeating the plaintiff in the recovery of the money covenanted to be paid her under said written agreement.

Answer: We refuse that point as applicable to the facts in this case.

4. Parol evidence of other considerations may be admitted to support a writing, but not to vitiate the consideration expressed therein, for the purpose of defeating recovery thereon.

. Answer: We refuse that point.

Arguments.

5. A promise to do some act in future, not expressed in writing, or intended to be, is not sufficient to defeat a written agreement; there must be either fraud, accident, or mistake in securing the signing.

Answer: As applicable to the facts in this case, we refuse that point.

6. If the jury believe the testimony of Mrs. Irvin, that at the time of signing the written agreement on September 11, 1884, she did not know of the alleged parol condition that she could not get the six thousand dollars therein named, or more than two thousand dollars of it, until she had first obtained a divorce from her husband, her rights are to be measured by the terms of the written agreement, and the parol evidence should be disregarded by the jury.

Answer: As applied to the evidence in this case, we refuse to answer that point in the affirmative.[18]

[Now, gentlemen of the jury, that leaves nothing in this case, except for you to render a verdict in favor of the defendant, and the clerk will take your verdict accordingly.] [32]

The jury returned a verdict for the defendant. Judgment having been entered thereon, the plaintiff took this appeal, assigning inter alia for error:

1, 2. The admission of defendant's offers.[1] [2]*

6. The admission of defendant's offer.[6]

12. The admission of defendant's offer.[12]

13, 18. The refusal of plaintiff's points.[13] [18]

30–32. The parts of the change embraced in [ ] [30 to 32]


*Mr. Frank Fielding* (with him *Mr. Oscar Mitchell* and *Mr. S. R. Peale*), for the appellant:

1. The irresistible conclusion from the plain words of the written contract, is that the attorneys, Murray & Gordon, were to hold the note only to secure compliance by the plaintiff with the convenants, which, in the writing, she undertook to perform in consideration of $6,000. The defence interposed was in contradiction of the written contract, and not

---

\* The second specification, and others relating to different parts of the testimony of the same witness, did not set forth the testimony actually admitted under the offers.

Arguments.

admissible at any stage of the trial; but, in any event, it was palpable error ·to admit it on cross-examination of a witness whom the plaintiff was obliged to call, thus placing her at a decided disadvantage : Jackson v. Litch, 62 Pa. 451 ; Hopkinson v. Leeds, 78 Pa. 396 ; Fulton v. Central bank, 92 Pa. 112 ; Hughes v. Coal Co., 104 Pa. 207 ; Thomas v. Loose, 114 Pa. 35. The alleged contemporaneous stipulation that the plaintiff should apply for a divorce, is not claimed to have been left out of the contract by accident or mistake, nor was it alleged that the defendant was thereby induced to sign the writing. It was therefore inadmissible to destroy the plaintiff's right of recovery : Martin v. Berens, 67 Pa. 459 ; Lewis v. Brewster, 57 Pa. 410 ; Thorne v. Warfflein, 100 Pa. 519 ; Smith v. Insurance Co., 103 Pa. 177.

2. The offer of the paper of March 28, 1885, given by the plaintiff to her counsel, comes within the rule that an attorney ·cannot be allowed, without his client's permission, to produce papers obtained by him in the confidential relation of attorney and client : Kaut v. Kessler, 114 Pa. 603 : Commonwealth v. Moyer, 11 W. N. 35 ; Bennett's Est., 8 W. N. 288 ; Beltzhoover v. Blackstock, 3 W. 20 ; Whart. Ev., 576, 580, 583. Though the alleged stipulation to procure a divorce may be illegal and void, that does not render the whole contract void, as no such stipulation appears upon the face of the contract; and the plaintiff does not require the aid of the illegal transaction to establish her case : Broom's Leg. Max., 712 ; Evans v. Dravo, 24 Pa. 62 ; Hendrickson v. Evans, 25 Pa. 441 ; Swan v. Scott, 11 S. & R. 155. And the testimony was conflicting as to whether the plaintiff assented to or authorized the parol stipulation for a divorce, and it was error to take the case from the jury. The conflicting testimony should have been submitted to them.

*Mr. John H. Orvis* (with him *Mr. J. F. Snyder*), for the appellee :

1. The testimony elicited on the cross-examination of Mr. Gordon was proper and pertinent. He was called to identify the note, produced as the one provided for by the written contract, and testified that it was delivered to his firm in pursuance of that contract. Surely, it was proper to cross-

examine him as to when and how it came into Murray & Gordon's possession, and upon what condition and for what purposes they held it. The cross-examination was confined to the point upon which he had been examined in chief, to wit the possession of the note and whose property it was. A proper cross-examination may develop a complete defence, by showing that the plaintiff's claim rests upon an illegal foundation: Johnson v. Hulings, 103 Pa. 498. But, rules as to the order of testimony are discretionary with the court: Helfrich v. Stem, 17 Pa. 152. A party may cross-examine as to the res gestæ given in evidence, though it be new matter: Markley v. Swartzlander, 8 W. & S. 172; Egbert v. Egbert, 78 Pa. 329. However, even if technically improper, the allowance of this cross-examination did the plaintiff no injury, as the case was not submitted to the jury.

2. The paper of March 28, 1885, was in no sense a confidential communication from client to attorney. It is not directed to the attorneys, but is a certificate to whom it may concern. It might very properly have been filed by the attorneys, as their authority for discontinuing the equity proceedings. The testimony in regard to the stipulation concerning the divorce was not offered for the purpose of contradicting or varying the terms of the written agreement, and it did not do so. It was a part of the agreement not reduced to writing, but perfectly consistent with the part that was written. That there was something not expressed in the writing, is almost a necessary inference from the reading of the sixth paragraph. In such a case, the parol part of the agreement may be proved: Whart. Ev., § 1015; Miller v. Fitchthorn, 31 Pa. 253; Imperial Ins. Co. v. Dunham, 117 Pa. 460. When a note is but the instrument of executing an illegal contract, it is tainted by the illegality, and no recovery can be had upon it: Morris Run Coal Co. v. Coal Co., 68 Pa. 188; Ham v. Smith, 87 Pa. 66; Conmey v. Macfarlane, 97 Pa. 361; National Bank v. Kirk, 90 Pa. 49; Bredin's App., 92 Pa. 241; Pearce v. Wilson, 111 Pa. 14; Comly v. Hillegass, 94 Pa. 132; Avery v. Layton, 119 Pa. 604; Kilborn v. Field, 78 Pa. 194.

OPINION, MR. CHIEF JUSTICE PAXSON:

There are thirty-two assignments of error in this case. A

Opinion of the Court.

discussion of them in detail is impracticable. We can only refer, in a general way, to the controlling principles presented by the record.

The action in the court below was brought upon a promissory note for four thousand dollars, made by the defendant to the order of Annie M. Irvin, and by her indorsed. At the time the note was made, it was delivered to Murray & Gordon, attorneys, and had remained in their possession to the time of the trial below, when it was produced by them upon call. The circumstances under which the note was given and placed in the custody of Murray & Gordon may be briefly stated as follows:

Martha Jane Irvin, the plaintiff, was the wife of James A. Irvin. The latter was a member of the firm of John Irvin & Bros. The firm owned valuable real estate in the counties of Clearfield and Indiana, which it became the interest of the firm to sell. They contracted to sell one tract, known as the Elk Lick land, to C. B. Howard and others, for the sum of one hundred fifty thousand dollars. The appellant was requested to sign the deed with her husband, and she refused. It is not necessary to refer in detail to the subsequent litigation and proceedings which culminated in the agreement dated September 11, 1884, between the appellant and John Irvin. By the terms of this agreement, Mrs. Irvin agreed, inter alia, to execute a quit-claim deed to certain real estate described therein, and to convey to the said John Irvin, the defendant, "all her right, title, and interest of every kind in all the remaining real estate owned by said James A. Irvin." By the fourth clause of said agreement, it is provided as follows: " In consideration of the foregoing, said John Irvin agrees and binds himself to pay to said Martha' Jane Irvin the sum of six thousand dollars, as follows : one thousand dollars in hand; one thousand dollars on delivery of the second deed within contemplated, to be made within twenty days; and the remaining four thousand dollars on November 1, 1885, for which he is to give, on the delivery of said second deed, a negotiable promissory note, with an indorser such as Murray & Gordon, her attorneys, may approve; said note to be with interest from December 1, 1884, the same to be delivered to said Murray & Gordon, as custodians for the parties hereto," etc. And by the

sixth paragraph, the agreement further provides that "Said Martha Jane Irvin agrees that in any proceeding she may institute against her husband for divorce, she will not assign any other reason therefor than the desertion of her by her husband."

Upon the face of the note in controversy, the plaintiff had no title. Her name did not appear upon it, and it was not and never had been in her possession. Upon the trial below, she called a witness to prove the signatures to the agreement, and also to identify the note as the one referred to therein. With this proof in, her case was complete, and upon the face of the papers she would have been entitled to recover, provided she had complied with the terms of the agreement. Just here occurred the first departure upon the trial in the court below. It is fully set forth in the first assignment, which is as follows: "The court erred in permitting the defendant to introduce his defence on cross-examination of Cyrus Gordon, Esq., called by plaintiff as a subscribing witness to the signatures to the contract and to identify note offered by plaintiff." The same question was raised by a number of subsequent assignments, but they do not conform to the rules of court. The first assignment, however, enables us to rule it.

The witness was allowed, against the objection of the plaintiff, to inject the defence into the case upon cross-examination. He was called for a single purpose, viz., to prove the signatures to the agreement, and to identify the note. The witness was permitted to say: "Well, it (the note) was left with us as custodians, and was to be held by us until the terms of the contract between them was complied with; amongst which were that she was to procure a divorce from her husband, provided he made no defence to it, or did not prevent her from procuring it."

It will be seen that this directly contradicts the written agreement. It contains no clause by which Mrs. Irvin agreed to procure a divorce from her husband. On the contrary, she merely stipulated that in case she should proceed against him for a divorce, she would not assign any other reason than his desertion. To meet this difficulty, the defendant was permitted to prove by the cross-examination of the witness, and against objection, that it was the understanding at the time the agreement was executed that the plaintiff was to procure a divorce from her

Opinion of the Court.

husband, before she would be entitled to receive the four thousand dollars; that this understanding was in parol, and was purposely omitted from the writing. It was contended, on the part of the defendant, that the divorce was the consideration or a part of the consideration of the agreement; that such a contract was against public policy, and tainted the entire transaction.

It is almost needless to observe that an ample consideration appears upon the face of the paper. The plaintiff was relinquishing valuable dower rights for a moderate compensation. She denies that any such agreement existed in regard to the divorce. Upon this point, there is a conflict of testimony which we are not required to discuss. I will observe, however, that, in our view, the paper of March 23, 1885, purporting to be signed by the plaintiff, does not strengthen the defendant's case upon the facts. The reference therein to the divorce is entirely consistent with what is said about it in the written agreement. It is evidence merely that she had commenced divorce proceedings : not that she had bound herself, as a part of the consideration of the contract, to procure a divorce.

It is very clear that all this evidence was improperly received upon cross-examination. The agreement itself explained the terms upon which the note was held. If relevant at all, it was only by way of defence. We do not think, however, it was competent at any time, or for any purpose. The effect of it was to reform a written instrument executed under the hands and seals of the parties; not only to reform it, but to inject into it a stipulation which the defendant claims renders it null and void, and prevents the recovery of a valid consideration stipulated to be paid for its execution.

The principle is too well settled to need the citation of authority that, where by fraud, accident, or mistake, something is omitted from an instrument, a chancellor will reform it in accordance with the actual agreement of the parties. But neither fraud, accident, nor mistake was alleged in this case. The contention is that the alleged clause stipulating for a divorce was purposely omitted from the paper. It is in direct conflict with the written instrument. The defendant contends that it destroys it in part at least. I know of no decided case and no principle of law which permits an oral contract, made

at the same time with a written contract under seal, and purposely omitted therefrom, to be set up not only to contradict but to destroy it. The two agreements cannot possibly stand together; one or the other must fall. When parties without fraud or mistake have put their engagements in writing, that is not only the best, but the sole evidence of their agreement. We may well be excused at this late day from entering upon an elaborate discussion of the law in relation to the admission of oral evidence to affect written instruments. It may be received to explain the subject-matter of such papers: Barnhart v. Riddle, 29 Pa. 92; to prove a consideration not mentioned in a deed, provided it be not inconsistent with the consideration expressed in it: Lewis v. Brewster, 57 Pa. 410; but not to contradict or vary the terms of the instrument itself: Martin v. Berens, 67 Pa. 459. The exception is, where there has been fraud, accident, or mistake in the making of the agreement; and, even in such case, the instrument can be reformed only by clear, precise, and indubitable evidence of what occurred at the time of the transaction. As was well said by this court in the case last cited, " Where parties without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule."

When the plaintiff had proved the agreement of September 11, 1884, and had identified the note in suit, she had a clear case. There was not a trace of anything in it that offended against morality or public policy. Hence we can understand the anxiety of the defendant to inject into it, upon cross-examination, something to discolor it. Had the evidence referred to been rejected, the defendant would have been compelled to set up what he designates as an unlawful, if not immoral transaction, by way of defence. As he was a party to it, he might have found this difficult. Without expressing an opinion as to the legal effect of the transaction, it is sufficient to say that it did not properly appear in the plaintiff's case, and her right to recover could not be defeated for such reason.

> Judgment reversed, and a venire facias de novo awarded.