# Wertz, Appellant, *v.* Klinger.

*Contracts—Impossibility of performance—Destruction of property.*

Where a contract is entered into of a continuing character, or to be performed at a future time, dependent upon the continuing existence of a particular person or thing, or the continuing ability of the obligor to perform, subsequent death, destruction or disability will excuse the obligor from compliance with the terms of the contract.

Where a person having the right to use canal boats owned by a canal company accepts a promissory note under an agreement by which he gives to the maker of the note the right to use the boats, and the maker agrees to pay the note in installments at the end of each trip, and it appears that after certain installments were paid the canal was abandoned by the canal company, the maker cannot be required to pay the balance of the note.

Argued March 16, 1904. Appeal, No. 23, March T., 1904, by plaintiff, from order of C. P. Perry Co., Aug. T., 1899, No. 107, making absolute rule to open judgment, in case of William Wertz v. S. E. Klinger and M. L. Horting. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Rule to open judgment. Before SCHULL, P. J.

The facts appear by the opinion of the Superior Court.

The court made absolute the rule to open the judgment.

*Error assigned* was the order of the court.

*James M. Sharon* and *James M. Barnett,* of *Barnett & Son,* for appellant.—When a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract: 2 Parsons on Contracts (9th ed.), b. p. 823; Harmony v. Bingham, 12 N. Y. 99; Paradine v. Jane, Aleyn, 26; Tompkins v. Dudley, 25 N. Y. 272; Dexter v. Norton, 47 N. Y. 62; Dewey v. Alpena School District, 43 Mich. 480; Hand v.

Baynes, 4 Wharton, 204; Spence v. Chadwick, 59 E. C. L. R. 516; Brown v. Royal Ins. Co., 102 E. C. L. R. 853; Tufts v. Griffin, 10 L. R. A. 526; Taylor v. Caldwell, 113 E. C. L. R. 824; Appleby v. Myers, 16 Law Times, 669.

*W. N. Seibert,* of *Seibert & Seibert,* for appellees, cited: Scully v. Kirkpatrick, 79 Pa. 324; Dexter v. Norton, 47 N. Y. 62; Dow v. State Bank of Sleepy Eye, 93 N. W. Rep. 121; Dixon v. Breon, 22 Pa. Superior Ct. 340; Pollard v. Shaffer, 1 Dallas, 210.

OPINION BY ORLADY, J., July 28, 1904:

On March 16, 1898, the defendants gave to the plaintiff a note providing that "Eight months after date, we promise to pay to the order of William Wertz, for canal boats Nos. 319 and 320, $500, without defalcation for value received, and with authority to enter judgment, with release of errors, waiving execution," etc. A judgment was entered on the note on October 28, 1899, and on September 4, 1902, an execution was issued. A few days thereafter a petition was presented for a rule to show cause why the fieri facias should not be stayed, and the defendants let into a defense. After the filing of an answer, the taking of testimony, and full hearing, the court made the rule absolute.

From the record it appears that the consideration (except $50.00) was for the right to use the two canal boats, under the rules of the Pennsylvania Canal Company. The terms of the contract upon which Wertz had possession of these boats does not appear, but it is apparent that the Pennsylvania Canal Company was the owner of the boats that were operated on its canal and that it had absolute authority over their movements, which fact was well known to the parties to this note.

When the note was given, an article of agreement was entered into, in which it was provided that the note was a part and parcel of the agreement, and stipulated as follows: "That the party of the first part especially agrees that the said note shall be paid in the following manner: That the party of the second part pay or cause to be paid to the party of the first part, the sum of $40.00, after each and every trip said boats have to Columbia; and it is hereby agreed that said boats will al-

ways take their turn for their trip to Columbia, and to pay said sum of $40.00 after each and every trip so taken, until said sum of $500 is paid, together with the interest on same. However, if the party of the second part wishes or desires to pay more than $40.00, said party of the first part must receive the same and receipt for it. If said boats are not run in their turn (except unavoidable accidents) the said sum of $40.00 must be paid right after said boats were in turn, but not loaded on account of the party of the second part not accepting a loading. The party of the second part especially agrees that he will run or cause to be run, said boats and keep their turn and accept loading for them to Columbia, every time they are in turn, and will in no way prejudice the rights of the party of the first part, and that if said boats are not run as stipulated, he will pay the said sum of $40.00 right after said boats were in turn at Naticoke."

While the agreement states that the note was a part and parcel of the agreement, the transaction indicates that the agreement was the principal contract between the parties, and that the note was given as a collateral security for its performance; and it is also clear that the stipulated payments were to come out of the use and profits of the two named boats, and to be derived in a particular way. The sum of $40.00 would be due only after the trip to Columbia, and the boats were always to take their turn on such trips. If not run "in their turn" the money was not to be paid until after they would be run "in turn," except when unavoidable accidents occurred, or Klinger should at any time refuse a loading and thereby place his boat out "of turn." All this clearly indicates that the source of payments was well understood by the parties, and that the receipts were to be derived from the use of particular property. After three payments of $40.00 each had been made on account of the note, one of the boats was disabled, and was ordered by the canal company into dock for repairs; then the parties to this note agreed that but $25.00 should be paid instead of $40.00, as provided by the agreement. After two $25.00 payments had been made, the canal was abandoned by the canal company. This event, over which the defendant had no control, prevented the further use of the boat or boats and ended the earnings with which the note was to be paid. · · · ·

This court recently held in Dixon v. Breon, 22 Pa. Superior Ct. 340, "That where a contract is entered into of a continuing character, or to be performed at a future time, dependent upon the continuing existence of a particular person or thing, or the continuing ability of the obligor to perform, that subsequent death, destruction, or disability will excuse the obligor from compliance with the terms of the contract."

Under the facts disclosed by the testimony the canal company had full control over the use of the boats. It was stipulated in the agreement that the payments on the note were to be made after the boats had made their turn in order, and as Klinger was not in any default, the abandonment of the canal was, as to him, an unavoidable accident, unforeseen and beyond his control. The case comes within the rule announced by Judge Blackburn in Appleby v. Myers, 16 Law Times, 669, "That when premises are destroyed without fault on either side, it is a misfortune, equally affecting both parties, and excusing both from further performance of the contract, and giving cause of action to neither." See also, Lovering v. Buck Mountain Coal Company, 54 Pa. 291; Ward v. Vance, 93 Pa. 499; Reed v. United States, 78 U. S. 591–606; The Tornado, 108 U. S. 342–351 (2 Sup. Ct. Repr. 746); Chicago & Milwaukee, etc., Ry. Co. v. Hoyt, 149 U. S. 1 (13 Sup. Ct. Repr. 779).

The impossibility of performance of the contract was entirely independent of the will and act of the defendant, as the abandonment of the canal was equivalent to the destruction of the boats by the canal company.

The judgment is affirmed.