Bokser, Appellant, *v.* Lewis.

508

Argued November 17, 1955. Before Stern, C. J., Stearne, Jones, Bell, Musmanno and Arnold, JJ.

*F. C. Fiechter, Jr.,* with him *Freeman, Fox & Fiechter,* for appellants.

*Roland J. Christy,* for appellee.

Opinion by Mr. Justice Bell, January 3, 1956:

This is an appeal from a final decree in equity confirming a prior adjudication and dismissing exceptions thereto. Plaintiffs filed a bill in equity to enjoin defendant from disposing of corporate stock he contracted to sell to plaintiffs and for specific performance of the contract and other equitable relief. The narrow question involved is whether the written agreement of purchase of the common stock of the Code Electric

Products Corporation was usurious and therefore unenforceable.

The Chancellor found the following facts:

"1.   (a)   *In October 1951,** defendant, Morgan J. Lewis, owned 516 of the 1,000 issued and outstanding shares of the common stock of the Code Electric Products Corporation, a Pennsylvania corporation, and had agreements to purchase the remaining outstanding shares.

(b)   Defendant, in October 1951, was the operating head of the Code Electric Products Corporation and directed its business of manufacturing mountings for electric meter boxes.

2.   (a)   On October 18, 1951, plaintiffs, Lewis Bokser and his wife, Sara L. Bokser, entered into a written agreement under seal with defendant Morgan J. Lewis.

(b)   This agreement provides for a loan of $10,000 from plaintiffs to defendant, for a period of one year at 6 per cent interest, with the proviso that the proceeds of the loan are to be used solely and on account of the business of Code Electric Products Corporation.

(c)   Plaintiffs advanced the loan of $10,000 by means of three checks—$2,500 on October 6, 1951; $2,500 on October 13, 1951; and $5,000 on October 18, 1951.  All checks were payable to defendant, Morgan J. Lewis.

3.   Subsequent to October 18, 1951, plaintiffs loaned an additional $11,000 to the Code Electric Products Corporation, receiving corporate security as collateral for the loan, in the form of accounts receivable of the corporation.

4.   (a)   At a subsequent time, the amounts borrowed by defendant were shown by the corporation as

---

* Italics throughout, ours.

corporate debts, and repayment of the loans was made (at least in part) by corporation checks.

(b) The entire principal amount of the two loans, totaling $21,000, together with interest at the rate of six per cent per year, was repaid to plaintiffs in a series of payments from November 14, 1951, through June 30, 1953.

5. (a) The agreement of October 18, 1951, included as Clause 9: *'Lewis agrees to sell to the Boksers, who agree to buy, up to, but not exceeding 450 shares of the common stock of the Code Electric Products Corporation, upon the following basis: Lewis shall sell to the Boksers one share of his said stock at $10.00 per share for each 3000 electric meter boxes which may hereafter be sold by said corporation.* Lewis agrees to give the Boksers not less than once a month a written report showing the number of said boxes sold by said corporation during the month preceding the date of the report . . .'

(b) Defendant has refused to furnish reports to plaintiffs of the number of electric meter boxes sold by the corporation, or to sell them shares of stock in accordance with the provisions of Paragraph 9 of the written agreement, despite demands upon him by plaintiffs through their attorney.

6. (a) The par value of shares of the common stock of the Code Electric Products Corporation on October 18, 1951, was $100 a share.

(b) On July 31, 1951, the book value of the shares of the common stock of Code Electric Products Corporation was $35.56 a share.

(c) The Corporation showed a profit of $8,577.20 on its operations during the seven month period ending July 31, 1951."

The written agreement was clear and specific, it was under seal and purported to cover the entire agree-

ment between the parties. It provided inter alia for a loan of $10,000 with interest at 6% per annum and for the sale by defendant to plaintiffs and the purchase by plaintiffs of certain stock at $10 per share. In the absence of fraud, accident or mistake, parol evidence as to preliminary negotiations or oral agreements and as to a prior or contemporaneous oral promise or representation or agreement is not admissible in evidence if it adds to or modifies or contradicts or conflicts with a written agreement which purportedly contains the entire agreement between the parties. Cf. *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255; *Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85; *Walker v. Saricks*, 360 Pa. 594, 63 A. 2d 9; *McMinn v. Mammone*, 169 Pa. Superior Ct. 1, 82 A. 2d 70.

In *Grubb v. Rockey*, 366 Pa. supra, we said on page 597: "The modern Pennsylvania Parol Evidence Rule is well stated by Mr. Justice STEARNE in Walker v. Saricks, 360 Pa. 594, 598, 63 A. 2d 9: 'This Court said in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 126 A. 791: "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, *the law declares the writing to be not only the best, but the only, evidence of their agreement*: Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. *All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract* . . . and unless fraud, accident or mistake be averred, the *writing* constitutes the agreement between the parties, and *its terms cannot be added to nor subtracted from by parol evidence:* Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208." ' "

It is clear that the Chancellor was correct when he held that parol evidence of prior conversations and ne-

gotiations which materially change the written agreement was inadmissible.

The learned Chancellor was likewise correct in holding that " '. . . parol evidence is always competent to show that a written agreement, lawful on its face, is in fact usurious' ". *Richman v. Watkins,* 376 Pa. 510, 514, 103 A. 2d 688; *Simpson v. Penn Discount Corp.,* 335 Pa. 172, 5 A. 2d 796. This is one of the exceptions to the parol evidence rule.

In *Simpson v. Penn Discount Corp.,* 335 Pa. supra, this Court said: "Wherever the question has arisen the general principle has been approved that parol evidence is always competent to show that a written agreement lawful on its face is in fact usurious. In 22 Corpus Juris, section 1627, it is stated: 'The rule which forbids the introduction of parol evidence to contradict, add to, or vary a written instrument does not extend to evidence offered to show that the contract was made in furtherance of objects forbidden by statute, by the common law, or by the general policy of the law; . . . This rule is a necessary one, for otherwise the most nefarious transactions might be protected by written instruments on the face of which no vice is apparent. In accordance with the rule parol evidence is admissible to show that, although the writing evidencing a transaction is legal upon its face, the real transaction is tainted with usury; . . .' "

Defendant contends that the stock purchase agreement was usurious and unenforceable because it was an extra bonus to plaintiffs above the 6% interest which defendant agreed therein to pay plaintiffs.

"When *a rate of interest* for the loan or use of money, exceeding that established by law, shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess

over the legal rate . . ." §2, Act of May 28, 1858, P. L. 622, 41 PS §4.

The contract of October 18, 1951 between plaintiffs and defendant provided for a loan of $10,000 by plaintiffs to defendant, who agreed to repay the principal sum in one year with interest at 6 per cent. The agreement, which was under seal, provided inter alia that defendant agreed to sell to plaintiffs one share of his stock in said corporation at $10 per share for each 3000 electric meter boxes which were thereafter sold by said corporation, and plaintiffs agreed to buy on that basis up to but not exceeding 450 shares of said stock. This is very different from an agreement to pay an excess rate of interest over the legal 6 per cent rate.

The Chancellor thought that this purchase-sale agreement amounted to usury, because the par value of the stock in question was $100 a share and the book value was $35.56 a share and the corporation which had been losing money for a number of years had a net profit of $8,577.20 in its operations for the seven month period ending July 31, 1951, and that "the indication of prospective market value of the shares (viewed from the date of the agreement) is considerably more than $10 a share." Anyone familiar with purchases and sales of stock on the New York Stock Exchange knows that the par value of a common stock has practically no effect on its market value, and that the book value of a listed stock is of relatively minor importance in determining its market value. This is equally and often more true of a minority interest in a small unlisted corporation. Stocks often sell at many times their book value, while other stocks sell at a fraction of their book value.

Defendant relies on *Freedom Oil Works Co. v. Williams*, 302 Pa. 51, 152 A. 2d 741. In that case defendant borrowed $10,000 from plaintiff to be repaid at the rate

514

of $100. a month with 6 per cent interest. In consideration of this loan, defendant agreed to purchase from plaintiff exclusively all gasoline and oil used or sold at the service station in question for three years. Defendant subsequently sold his garage and service station, and plaintiff sued for the loss of profits it would have realized on the sale of gasoline and oil to defendant from the date of the breach of contract to the end of the period it had yet to run. The defense was that the agreement to purchase gasoline and oil made the contract usurious. This Court said on page 55: "The present contract was clearly for the mutual benefit of both parties, plaintiff anticipating a profit from the sale of the gasoline and oil to defendants, and defendants, in turn, anticipating a profit from the sale of the same products to their customers. *Contracts of this character are usual in this State,* and, so far as we have discovered, no one has heretofore questioned the mutuality of obligations incurred by the respective parties Under our view of the case, as *expressed above, these are mutual covenants which furnish a valid consideration* for the contract aside from the loan of money, and, accordingly, the argument that the contract is necessarily usurious if damages for its breach are recovered must fail. Apart from the loan, therefore, the contract was complete, mutual and sustained by ample consideration. *The mere fact that one who loans money with interest is induced to do so by an independent contract relating to collateral matters does not render the loan usurious,* even though the borrower would not have entered into the collateral contract except on condition that the loan be granted. A loan is not necessarily usurious by reason of its constituting part of an agreement between the parties which they regard as mutually beneficial and to which the loan is merely incidental. In other words, if, irrespective of the loan, the parties

desire to enter into a contract for their mutual benefit, the mere fact that, as part of the arrangement, a loan is made from one to another at a legal rate of interest to enable him to perform his part, does not constitute usury though the contract would not have been made without the loan: Clarke v. Sheehan, 47 N. Y. 188, 194. See also 39 Cyc. 987, and cases cited in note 2."

That case strongly supports the position not of the defendant but of the plaintiffs and demonstrates that the agreement to purchase the stock in this case was not usurious.

Plaintiffs were entitled to be informed by defendant of the number of meter boxes sold by the corporation (prior and subsequent to its merger) between October 18, 1951 and the date of the Chancellor's order, as well as to specific performance of the purchase-sale agreement of October 18, 1951 and such additional equitable relief as the Court may deem proper.

The decree of the Court below is reversed with directions to enter an adjudication and a decree in accordance with this opinion. Costs to be paid by defendant.