## Keleher, Appellant, *v.* LaSalle College.

546

Argued November 14, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

reargument refused February 11, 1959.

*Isadore Winderman,* for appellant.

*Joseph E. Gembala, Jr.,* with him *Samson B. Bernstein,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 15, 1959:

This appeal involves a question of the applicability of the Parol Evidence Rule.

James F. Keleher, appellant, taught philosophy and religion at LaSalle College, Philadelphia, from 1948 to 1953. On June 15, 1951, appellant and appellee, the latter acting through its then president, Brother Paul, entered into a written contract of employment, the summarized terms of which are: (1) appellant was employed as a full-time member of appellee's instructional staff with the rank of "Assistant Professor of Philosophy in the Area of Philosophy and Religion" for the

academic year 1951-1952; (2) appellant agreed to (a) serve "faithfully, diligently and according to his best abilities", (b) to accept at appellee's request certain administrative and non-teaching duties such as student consultation, etc., (c) by his conduct to uphold appellee's ideals and (d) not to engage, directly or indirectly, in any activity detrimental to appellee; (3) appellant was to be paid a salary—for a minimum semester teaching load of 12 semester credit hours and a maximum teaching load of 16 semester credit hours—of $3950, provided that if the appellee requested a teaching load in excess of 16 semester credit hours per semester, appellant's compensation would be the sum, per hour, which the maximum semester teaching load multiplied by thirty established academic weeks bears to $3950, multiplied by fifteen established academic weeks for each semester.

On June 15, 1952, appellant and appellee, the latter again through its then president, Brother Paul, entered into another written contract identical with the 1951 contract in all respects except that it covered the academic year 1952-1953 and appellant's salary was fixed at $4160.

On March 2, 1953, Brother E. Stanislaus, then appellee's president, wrote appellant to the effect that appellee could not offer him a new contract upon the expiration of the 1952-1953 contract, assigning as the reason therefor the necessity that appellee curtail its expenditures because of rising costs and diminishing enrollment. On March 7, 1953, the appellant wrote Brother Stanislaus questioning his authority to revoke "academic tenure" which appellant stated had been given him in June 1951 by Brother Paul and requesting of Brother Stanislaus an appeal to appellee's board of managers. On March 11, 1953, Brother Stanislaus wrote appellant: ". . . Please be advised that, inasmuch

as this [academic] tenure was extended to you under the authority of the President, it can, likewise, be revoked under the same authority . . .", and since as president of the board of managers, Brother Stanislaus had full authority to act, no question of an appeal to the board of managers was involved. In the same letter Brother Stanislaus offered to continue appellant's services until June 1954 subject to the conditions that appellant would not act as head of the Department of Religion and Philosophy and that his salary would be cut to its previous level, which offer, in the absence of an acceptance by appellant, was withdrawn on April 23, 1953.

On September 18, 1953, appellant instituted an assumpsit action against appellee for an alleged breach of an *oral* contract of employment. In this action appellant alleged that in June of 1951,[1] Brother Paul, appellee's president, entered into an *oral* contract with appellant increasing his salary to $4160, assigning him as "Acting Chairman of the Area of Philosophy and Religion" and giving him "tenure of academic employment", and that the revocation, without cause, of his tenure and employment by appellee, violated and breached this oral contract. Appellee's answer denied the existence of any oral contract and averred that appellant's employment arose solely under the two written contracts of June 15, 1951 and June 15, 1952.

When the matter came for trial before Judge JOHN MORGAN DAVIS and a jury and after appellant's counsel's opening address, the first day of the trial apparently was consumed in conferences between the court and counsel. The next day, apparently as the result

---

[1] Whether the alleged oral contract was entered into prior or subsequent to the written contract of June 15, 1951 does not appear clearly from the record.

of a stipulation between counsel, appellee's counsel offered in evidence the written contract of June 15, 1952 and, in response to a question addressed to him by appellee's counsel, appellant acknowledged that the signature on this written contract was his signature. After appellant's counsel had placed in evidence the March and April 1953 correspondence between appellant and Brother Stanislaus, the trial court granted "a motion for a nonsuit on the pleadings". Appellant presented a motion to set aside this nonsuit which motion was subsequently denied and a judgment entered for appellee on April 1, 1958. Subsequent to the perfection of this appeal, Judge DAVIS in a written opinion directed the prothonotary to correct the docket entries made April 1, 1958 which showed the entry of a nonsuit and to enter in place thereof judgment for the defendant upon the pleadings.

The instant record is far from satisfactory. *Apparently*, after conferences between counsel and the court, an agreement was reached as to the manner of presentation of the evidence so as to raise the fundamental issue in the lawsuit, to wit, the applicability of the Parol Evidence Rule. The court then entered a "nonsuit on the pleadings" and the docket entries of April 1, 1958 reveal a denial of appellant's motion to set aside the nonsuit and the entry of a judgment for appellees. Then—*approximately four and one-half months later and after the present appeal had been taken*—the court directed the entry of a judgment on the pleadings under Rule 1034, Pa. R. C. P. Ordinarily this record should be remanded for appropriate correction. However, under the particular situation herein presented since the sole issue is whether proof of appellant's alleged oral contract is admissible in view of the written contract of June 15, 1952 and the record suffices to present that issue, we need not remand the record or

determine the propriety as a matter of procedure of the action of the court below in entering either the initial nonsuit or the later judgment on the pleadings. Under the instant circumstances we have, under the Act of May 20, 1891, P. L. 101, §2, 12 PS §1164, the power to enter such judgment as we deem just and proper without remanding the record to the court below for amendment or correction. As the late Chief Justice DREW stated in *Jordan v. Sun Life Assurance Co. of Canada,* 366 Pa. 495, 500, 501, 77 A. 2d 631: "Plaintiff has also raised a procedural point. He was cross-examined extensively concerning the letter of resignation but the letter was not introduced in evidence at that time. At the close of plaintiff's case, defendant moved for a nonsuit but no action was taken on that motion. Defendant then opened his case by introducing the letter in evidence and renewed his motion for nonsuit, which was then granted. The granting of a nonsuit after defendant has introduced evidence is a clear violation of the Act of March 11, 1875, P. L. 6, §1 and cannot be condoned. However, to grant a new trial in this case where plaintiff is barred by the parol evidence rule from proving his claim would be a useless act and this Court will not make such a vain order. . . . Exercising our power under that Act [the Act of 1891, supra] in the present case we shall here enter judgment for defendant." It would likewise be vain if we failed to exercise our power to act definitively in this action.

We repeat, the fundamental issue is whether, in view of the written undertaking of June 15, 1952 between the parties, the appellant should be permitted to prove by parol evidence the terms of the alleged oral contract of June 1951.

*Walker v. Saricks,* 360 Pa. 594, 598, 63 A. 2d 9, well states the Pennsylvania Parol Evidence Rule: "This

Court said in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 126 A. 791: 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement: Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence: Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208.' " See also: *Grubb v. Rockey,* 366 Pa. 592, 79 A. 2d 255; *Bokser v. Lewis,* 383 Pa. 507, 119 A. 2d 67. In *O'Brien et al. v. O'Brien,* 362 Pa. 66, 71, 66 A. 2d 309, we said: ". . . the test is 'whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so inter-related that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court.' "

The written contract of June 15, 1952 is clear and free of any ambiguity. It purports to encompass all the terms and conditions of the relationship between appellant and appellee concerning the former's employment as a teacher during the academic year 1952-1953. Appellant now seeks to prove an oral agreement which would clearly alter and vary the terms of this written contract in a most material instance, to wit, the length of appellant's employment. The written contract distinctly and unambiguously sets forth that appellant is employed for the academic year 1952-1953. What ap-

pellant wants to prove is that, as the result of an oral contract, he acquired "academic tenure" by which we understand permanent tenure. That appellant's oral contract would vary and alter the written contract is clear beyond any peradventure of doubt.

Appellant neither alleges nor does he seek to prove any fraud, accident or mistake, but simply contends that the Parol Evidence Rule is inapplicable because the written contract did not constitute an integration of the alleged oral contract and that both the oral and the written contract are co-existent. A comparison of the subject-matter of the written contract with that of the alleged oral contract clearly indicates an integration of the latter by the former. To allow appellant to prove an oral contract under these circumstances would violate the Parol Evidence Rule, a rule to which this Court requires rigid adherence. Both the spirit and the letter of the Parol Evidence Rule enunciated in *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791 and a host of subsequent decisions, compel the rejection of evidence as to any alleged oral contract in June 1951 between the parties.

For the reasons stated, judgment is directed to be entered for the appellee.