The opinion of the court was delivered by
Duncan, J.
The defence rested on this one principle: Could an inquiry be gone into with respect to the alleged illegal origin of the contract, between the parties, on which the settlement had been made, and which had been decided under the compulsory arbitration act, in favour of Scott’s claim? The effect of that proceeding, was the hinge on which the whole controversy turned. If we can look beyond the record, and go back to the first cause, then there is error; but if that is final, and concluded the right of the parties, the defence totally failed. It is contended on the one hand, most *163 strenuously, that we can go to the fountain head, the illegal lottery, and if that is corrupt, it taints the whole stream; the stain never can be washed out; no confirmation, however solemn, can validate an illegal transaction, or purify a corrupt agreement; while on the other hand, it is as earnestly insisted on, that the matter of the legality of Scott’s demand, in satisfaction of which, this bond was given, has passed in rem judicatam, by the award, judgment, appeal, and withdrawing of the appeal, and satisfaction entered on the judgment by Scott.
If Swan had acquiesced in this award for twenty days, the judgment would have been final j-butthejudgmentremained, not withstanding the appeal, and when it "was withdrawn, Scott might have then issued his execution; the judgment became final, and I may add, irreversible; it fixed both parties; there was an end of the controversy. Hamilton’s 'Executors v. Moore, establishes this, which has been followed up in Brenner’s Case, in which the opinion was delivered by this court, and where the withdrawing the appeal by becoming nonsuit, was most disastrous to the plaintiff’s right. The appellant may renounce the privilege of appeal, by acquiescing in the award, and where he has entered it, may abandon it; the consequence is the same, the judgment ceases to be initiatory, suspensive or conditional; it becomes final, absolute, and unconditional. Nothing in a judicial record can be ,mpre conclusive, than a judgment on an award appealed from, and the appeal withdrawn. It has all the sanctity that any, the most solemn judgment can possess. The inviolability of judgments is an axiom .of the common law, its boast and its pride;,the protection of all rights, the security of life itself. The judgment of the law, like the hand of death, puts an end to all strife. Lord Coke, in his preface to his 8th Reports, laments the multiplicity of suits, in one and the same cause. He sa)7s, “Ofttimes there are verdicts on one side and on the other, and yet the plaintiff and defendant can come to no finite end, nor hold the possession in quiet, though it is often tried, and judged for either party:” and he adds, “In personal actions, concerning debts, goods-' and chattels, a recovery in bar in one action,- is a bar in another, and there is an end of the controversy. In real actions, for the freehold and inheritance, being of a higher and. worthier nature, and standing upon a greater variety of title, and difficulties in law, there could not be above two trials, or at most three, and that very rarely; and in the mean time, after one recovery, the possession rested in quiet.” This position of Lord Coke, with respect to actions for the realty, is not well founded, for a judgment in each species of action, is final for its own purpose and object, equally con-' elusive of its own subject matter, by way of bar to future litigation for the thing thereby decided. The judgment, which is the fruit of the action, follows the nature of the particular right claimed, which in the first action, as appears by the statement, was for services rendered respecting the town of Portsmouth. That judg *164 meni gave the plaintiff an ascertained right to the debt recovered, and the means of obtaining it; nor can it be at all material, that the defence there set up, was not precisely the same, as that now set up, because the defendant might have given in evidence every thing which he now offers;and if he did not, it was his own fault; he was permitted there to make his defence, he did make it, and failed. Nace and others v. Hollenbach, 1 Serg. & Rawle, 540. Kelller v. Jones, 4 Binn. 61, 72.
The fallacy of the argument is, in supposing the settlement and its consideration, to be the foundation of this action: whereas, it is on a bond, the consideration of which, was the judgment; that judgment brought the parties to a finite end. The plaintiff below did not claim through the medium of an illegal transaction, but through a final judgment. The test, whether a demand connected with an illegal transaction, is capable of being enforced at law, is, whether the plaintiff requires the aid of the illegal transaction, to establish his case. If a plaintiff cannot open his case, without showing that he has broken the law, a court'will not assist him,, whatever his claims injustice may be upon the defendant; and if the illegality be malum prohibitum only, the plaintiff may recover, unless it be directly on the forbidden contract; a bond, the consideration of which, grows out of an illegal transaction; there the illegal consideration is the sole basis of the bond,and there can be no recovery; but if a judgment has been rendered on that bond, and another bond is given in satisfaction of it, there the judgment, which must be legal, is the consideration, and the obligor is precluded from entering into the illegality of the original transaction. This is clearly established in the case of Faikney v. Reynous, the principle of .which, though doubted by a high authority, has stood its ground whenever it has been questioned. The conclusion is, that if a verdict be founded on any fact or title, distinctly put in issue, such verdict is an estoppel between the same parties, in respect to the same fact. The plaintiff’s services at Portsmouth, were put in issue in the first action, and the value ascertained by the award and judgment, which in this respect are of as conclusive a nature as the finding of a jury, and judgment on it. It is impossible to conceal the drift of the defence: the defendant had no case, unless hevvas-let in to impeach the judgment of the arbitrators, to overhaul in this action, the merits of the judgment in an original action between the same parties, on the very same issue. To do this, would be unsettling foundations, a thing new and unheard of in our law. The rule is as ancient as the law itself, that the merits of a judgment cannot be overhauled by an original suit, either at, law or in equity; till that judgment is set aside or reversed, it is conclusive as to the subject matter of it, to all intents and purposes. It is á vain attempt to distinguish between the judgment and the grounds of it. To say that the merits of a case determined by arbitrators, in which there has been an appeal, and the appeal with *165 drawn, never can be brought in question again, in any shape whatever; and yet to say that the plaintiff ought not, injustice, to recover the money on it, is not to me intelligible. If this defence should prevail, if Swan had paid the money to Scott, it could be recovered back; and if he was to declare specially, he must allege, that the defendant had-reeovered a judgment against him, which he ought not to have done,whereby he was injured: this is making the judgment a part of the gravamen. So, here the defendant says, in answer to this bond, it is founded on a judgment, which you have recovered, gnd which you ought not to have recovered. This judgment created a duty, for the recovery of which, the plaintiff might have brought-an action of debt, and the substitution of this bond, and the action on it, are in fact, an action of debt to recover the amount of this judgment. Much has been said as to the Chancery powers of this court; but'if we were clothed with all the extraox-dinary jurisdiction of a Court of Chancery, and we ought to exercise Chancery powers, so far as the forms of a coui-t of common law will admit; yet a Chancellor could not relieve against this award and judgment, for Chancery in no case, can relieve against a fraud, which a party might-have shown, but omitted to show on a trial; for if this could be done, -a suit would be interminable, the parties never could bring the controversy to a finite end. Chancery is not unbound by any rule. A bill of review, to which this defence has been compared, must be for some matter discovered.since the last bill. There can be no mode in which the award of arbitrators ca'n be reviewed, but by appeal: the defendant did appeal, but he finally withdrew his appeal; the judgment became final. A compromise under an interlocutory judgment of an illegal transaction,.is quite wide of this case, which did not partake of any thing interlocutory; but a bond given and received in satisfaction and payment of a final judgment. There was no attempt to prove this was brought about by any fraud of Scott; but if there had been any such evidence, it was fairly left to the jury, and the jury have negatived the fraud. The special notice is silent, contains no suggestion of this kind. .The court were well justified in charging the jury, on the whole case, that the law was with the plaintiff, and he ought to recover, having previously instructed them as to the effect of a fraud in obtaining the bond.
-The first and second bills of exceptions, relate to the overruling of the answer of George Fisher, a: witness of the plaintiff in or-1ror. . The question itself, put by'him to -his own witness, was impropfer: “ If the tickets had been sold to persons unable to pay for the lots, would you have considered yourself bound to pay Mr, Scotty? The answer was, “that, it was understood, that sales were not-to be made to persons, who were unable to pay for the lots. And if a considerable portion of them Had been so sold, I would not hxve Considered myself bound by the contract, to have paid the full amount of 3,000 dollars; and if they had been all sold to persons insolvent, I would not have paid 'any part of it. ;5 Mr. Fisher *166 was not asked to state his knowledge of the contents of any written instrument. His answer responds to the question; it is his understanding and consideration of what he would have done on certain events. It cannot be concluded from what Mr. Fisher states, that the contract contained any provision as to insolvencies. The question and answer to these interrogatories were properly suppressed. The third bill of exceptions, on first impression, seemed to contain a very serious objection; but considering how the matter stood, when the offer was made of the bonds, and some money in liquidation of the award, • the difficulty is removed. The sum had been ascertained by the award. The offer was not in the nature of compromise, but a mode of payment; a substitution of bonds in part, and money in part. The evidence was proper, in another point of view, to remove an imputation of fraud in obtaining this bond; to show that Swan offered other bonds, which were refused, and that Scott finally accepted his own bond in satisfaction of the judgment. It cannot be pretended, but this bond was the satisfaction which Scott acknowledged he had received as satisfaction and payment of his judgment debt. Besides, if there was any thing equivocal in the offer, or in the language of the witness, it was properly left to the jury to decide, whether it was an offer of compromise, or a proposition of payment of the sum awarded, in good bonds and money. And if the jury concluded it was not a proposition of payment, but an offer of compromise, they were cautioned to exclude it from their consideration, and give it no weight. This is notan unusual course, where the parol evidence is susceptible of different interpretations. I put a familiar instance, under the plea of the.statute of limitations: — A letter written by defendant to plaintiff’s attorney, on being served with the writ, couched in ambiguous terms, neither admitting or denying the debt, is to be left to a jury to draw their own inference, whether it amounts to an acknowledgment of the debt, so as to take it out of the statute of limitations. Ballcntync on Limitations. 195. Brown v. Campbell, 1 Serg. & Rawle, 180, where it was said, that if the expressions of the letter were doubtful, or it became necessary to refer to something extraneous, to understand it, it would be proper for the jury to consider, whether a promise might not be presumed. But I rest on this, that the*offer of the bonds and money was a position of payment.
The fourth bill of exceptions is involved in the general question. If the conclusion is right, that the award arid judgment preclude all inquiry, this receipt was properly rejected, being anterior to the judgment on the settlement. It cannot be admitted now to the defendant to claim a credit for it. It is offered as evidence of part payment, not allowed by arbitrators; but the award and judgment put a seal on the whole controversy, closed the same and estopped the parties.
To allow the receipt would be to disaffirm the judgment. That *167 cannot be disaffirmed, but must stand. It is a very specious proposition, that it is against good conscience not to give credit for this payment. Whether it was allowed by the referees, or canvassed before them, and decided on, we cannot now inquire into. But it is not solid, and would open a wide door, if in every case of recovery before arbitrators, and judgment thereon, and money paid, the defendant could recover it back, in an action for money had and received, on an allegation, that a particular credit had not been allowed: it would destroy this tribunal; would render it a most litigous forum, and instead of a judgment being the end of strife, it would be but the beginning. It can never be made a question, that where a plaintiff has received money on an adverse judgment, and there is no other relation than debtor and creditor, the plaintiff can be considered as receiving the money for the use of the defendant; and it never can be, that .the same judgment shall create a duty for the recovery, upon which an action of debt would lie by the plaintiff, and a duty against him, for which an action for money had and received would lie. I speak now merely with relation to debtor and creditor; as between them it cannot be disputed, but that the judgment is final. It is therefore the opinion of the court, that the judgment be affirmed.
Judgment affirmed,