## Fritz et ux. v. McGeehan.

*Contracts—Illegal contract—Violation of liquor law—Statement of claim.*

1. Public policy forbids the prosecution of an action founded on immoral or illegal grounds.

2. The test whether a demand connected with an illegal transaction is capable of being enforced at law is, whether the plaintiff requires the aid of the illegal transaction to establish his case.

3. Where the statement of claim does not show on its face that an illegal contract was made recovery can be had.

4. Where a statement of claim avers that plaintiff owned certain whiskey and had paid defendant a stated amount of money to procure the delivery of such whiskey, but the defendant had failed to deliver it and retained the money, and the statement does not show that the whiskey was to be transported in violation of law, or for other than medicinal purposes only, the statement shows a good cause of action.

*Practice, C. P.—Affidavit of defence—Merits and law—Statement of claim.*

5. It is bad practice to file an affidavit of defence to both the merits and law of a case.

6. Where such an affidavit of defence is filed and the court finds against the defendant, both on the merits and law, leave to file another affidavit will not be allowed and judgment will be entered for plaintiff.

7. A mere denial of an averment in a statement of claim is insufficient.

Rule for judgment for want of a sufficient affidavit of defence. C. P. Schuylkill Co., Jan. T., 1923, No. 298.

*George M. Roads* and *P. B. Roads,* for plaintiffs.

*R. J. Graeff,* for defendant.

Koch, J., June 4, 1923.—The plaintiffs filed their statement of claim, and the defendant filed an affidavit of defence to both the merits and the law. Then the plaintiffs took a rule for judgment for want of a sufficient affidavit of defence, and the defendant subsequently filed another affidavit of defence again raising the same question of law.

It is bad practice to file an affidavit of defence to both the merits and the law of a case, but as the defendant has chosen to meet both the merits and the law, we will dispose of both. I think matters can be made most clear and simple by quoting from the pleadings all that is needed for an entire understanding of this case.

The plaintiffs, in the first and second paragraphs of their statement, aver, and the defendant, in the first paragraph of his affidavit of defence, admits, that the plaintiffs reside in the Borough of Coaldale and the defendant in the Borough of Tamaqua. The balance of the plaintiffs' statement is as follows:

"3. That on or about Dec. 10, 1919, and prior thereto, the plaintiffs were the owners of three invoices for three barrels of whiskey to be shipped from

4 D. & C.

A. Overholt & Company, Pittsburgh, Pa., as in the said invoices more particularly specified and described.

"4. That on or about Dec. 10, 1919, in the said Borough of Coaldale, defendant approached plaintiffs and stated to them that he, defendant, was on very friendly terms with the said A. Overholt & Company, and in a position to expedite the delivery to plaintiffs of the said three barrels of whiskey, and that if the plaintiffs would deliver to defendant the said three invoices and pay the Government tax upon the said whiskey, together with his, defendant's, charge for delivering the same, defendant would insure the prompt delivery by him of the said three barrels of whiskey to plaintiffs in the said Borough of Coaldale.

"5. Whereupon plaintiffs, believing and relying upon the said statement of defendant as to the prompt delivery to them of the said whiskey, accepted defendant's proposition and delivered to defendant the said three invoices.

"6. That on or about Feb. 15, 1920, the said Cassie Fritz called at defendant's then home in the said Borough of Coaldale and inquired as to the cause of the delay in the non-delivery to plaintiffs of the said three barrels of whiskey, whereupon defendant stated that the said whiskey was in transit, and that if satisfactory to plaintiffs said defendant would deliver to plaintiffs one barrel of his, defendant's, whiskey in exchange for one barrel of the said three barrels claimed by defendant to be in transit for delivery to plaintiffs as aforesaid, which plaintiffs agreed to accept, and defendant thereupon delivered to plaintiffs one barrel of his, defendant's, whiskey.

"7. On or about March 12, 1920, the said Cassie Fritz again visited the then home of defendant in the said Borough of Coaldale and inquired of defendant as to the reason for the non-delivery by him, pursuant to the agreement hereinabove mentioned, of the two barrels of whiskey, at which time defendant advised the said Cassie Fritz that the said two barrels of whiskey had just arrived and were in his warehouse, located in the rear of his said home, and that if the said Cassie Fritz would send some one with a truck to his said home under cover of the night, he would promptly deliver the same to her upon receipt by him, defendant, of the amount of $1200, which defendant claimed to represent the Government tax upon the said two barrels of whiskey and his expenses in delivering the same.

"8. The said Cassie Fritz contended to defendant that this amount was excessive, and defendant finally agreed to accept, and did at that time accept, a certified check for $500 and $380 in cash as a full payment for all of the charges incident to the delivery by him of the said whiskey as per the agreement between plaintiffs and defendant hereinabove mentioned.

"9. During the evening of the same day, to wit, March 12, 1920, as the said Cassie Fritz was about to send a truck to defendant's warehouse to obtain the said two barrels of whiskey, the defendant anticipated her and sent his own truck to plaintiff's home in the said Borough of Coaldale and delivered thereat two barrels of dyed water instead of the two barrels of whiskey called for in the said agreement of Dec. 10, 1919.

"10. Plaintiffs have made demand of defendant to either deliver to them the two barrels of whiskey covered by the said two invoices or to return to them the said $880, but defendant is neither willing to deliver the said whiskey nor to return the said $880 to plaintiffs.

"11. Wherein, by reason of defendant's non-performance as aforesaid, plaintiffs claim from defendant the sum of $880, with interest from April 1, 1920."

We will quote from the defendant's affidavit of defence as follows:

Fritz et ux. *v.* McGeehan.

"2. The third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh paragraphs of the plaintiffs' statement of claim are denied.

"3. The defendant says he is not indebted to the plaintiffs in the sum of $880, with interest from April 1, 1920, or any other amount, but that, on the contrary, the said Cassie Fritz is indebted to the defendant.

"4. The defendant further avers that the plaintiffs' statement of claim, on its face, shows that the plaintiffs are not entitled to recover any amount from the defendant. The contract and agreements as set forth in the plaintiffs' statement of claim are illegal and void, and the plaintiffs are not entitled to recover from the defendant on their own showing.

"5. The plaintiffs' statement does not set forth a good cause of action.

"6. The defendant respectfully requests that the court enter judgment in favor of the defendant on the pleadings."

The second affidavit of defence reavers the fourth and fifth paragraphs of the first affidavit of defence, being as follows:

"1. The plaintiffs' statement does not set forth a good cause of action.

"2. The plaintiffs' statement, on its face, shows that the plaintiffs are not entitled to recover any amount from the defendant. The contract and agreements as set forth in the plaintiffs' statement of claim are illegal and void, and the plaintiffs are not entitled to recover from the defendant on their own showing."

1. As to the question of law.

One who knows nothing of either of the parties to this suit could not say that the plaintiffs' statement of claim, on its face, shows that the contract and agreements therein set forth are illegal and void. And we must consider these pleadings in like manner as though we knew nothing of either of the parties here. The statement does not show that the whiskey was to be transported in violation of the law or that it was to be transported for other than medicinal purposes only. The statement of claim, in connection with the affidavit of defence, raises a strong suspicion that circumvention of the law was in contemplation, or that otherwise the statement might show that the whiskey was to be delivered by the defendant compatibly with the law of the land and not in violation of it. The plaintiffs could lawfully have owned three invoices for three barrels of whiskey, and they aver that they were the owners of three such invoices. The defendant seemed to be aware of that fact, and he "approached" the plaintiffs and evidently suggested to them the transportation of the whiskey, making them believe that he was on friendly terms with A. Overholt & Company, and in a position to expedite its delivery. And if the plaintiffs made a contract violative of the law with the defendant, he wrongfully induced them to do so, and he now tries to take advantage of his own wrong and retain all the fruits of it. If the statement be true, it shows a shameless swindle on the part of the defendant, and he cannot be heard to plead his own wrong in defence of the plaintiffs' claim for the return of their invoices and of the cash which the defendant obtained in such a reprehensible manner. *Allegans suam turpitudinem non est audiendus.*

Of course, one should show that he stands on legal ground when he seeks relief in a court of justice, for courts will not aid the enforcement of contracts made in violation of law. Public policy forbids the prosecution of an action founded on immoral or illegal grounds: Mitchell *v.* Smith, 1 Binney, 110; Maybin *v.* Coulon, 4 Dallas, 298; Duncanson *v.* McLure, 4 Dallas, 308; Biddis *v.* James, 6 Binney, 321; Seidenbender *v.* Charles's Admin'rs, 4 S. & R. 151; Badgley *v.* Beale, 3 Watts, 263; Kepner *v.* Keefer, 6 Watts, 231; Wagonseller *v.* Snyder, 7 Watts, 343; Edgell *v.* McLaughlin, 6 Wharton, 176; Clippinger 4 D. & C.

v. Hepbaugh, 5 W. & S. 315; Columbia Bank and Bridge Co. v. Haldeman, 7 W. & S. 233; Unger v. Boas, 13 Pa. 601; Brua's Appeal, 55 Pa. 294; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173; Fowler et al. v. Scully, 72 Pa. 456; Holt v. Green, 73 Pa. 198; Thorne v. Travelers' Insur. Co., 80 Pa. 15; Dickson's Executor v. Thomas, 97 Pa. 278; Spalding v. Ewing, 149 Pa. 375; Whitmire v. Montgomery, 165 Pa. 253; Knight v. Press Co., 227 Pa. 185; Smyers v. McMahon, 71 Pa. Superior Ct. 142; Bibb v. Allen, 149 U. S. 481; 39 Law Ed., 819.

But "the test whether a demand connected with an illegal transaction is capable of being enforced at law is, whether the plaintiff requires the aid of the illegal transaction to establish his case: 11 Serg. & Rawle, 155; ·10 Barr, 270;" Scott v. Duffy, 14 Pa. 18. See, also, Mohney v. Cook, 26 Pa. 342; Shuman v. Shuman, 27 Pa. 90; Foreman v. Ahl, 55 Pa. 325; Fowler et al. v. Scully, 72 Pa. 456; Whitmire v. Montgomery, 165 Pa. 253, and Smyers v. McMahon, 71 Pa. Superior Ct. 142.

The plaintiffs' statement, however, does not show that the plaintiffs require the aid of an illegal transaction to establish their case.

Although betting on elections is illegal, yet either side to a bet may recover the amount deposited with the stakeholder, if notice be given, even after the result of the bet has been determined, but before the money is paid over. "This right to recover from the stakeholder seems to be rested on impregnable grounds, namely, that the money being paid on a contract prohibited by law, the contract being void, the owner's right of reclamation is not to be impeded by it:" Forscht v. Green, 53 Pa. 138. So in this case, if the contract made is prohibited by law, it is void and the owner's reclamation is not to be impeded by it. And if the contract be lawful, then recovery is permissible because of its rescission.

In App v. Coryell, 3 P. & W. 494, which concerned money bet on a horse-race, the Supreme Court said in a *per curiam* opinion: "The court very properly directed that money staked may be recovered either from the winner or the stakeholder. . . ." And again: "The contract being void, the money could be recovered only on the promise implied from the receipt of it to the plaintiff's use, which in this respect is determined by the nature of the consideration. The promise, in fact, arises out of and is guided by the consideration, which is the receipt of the money, as was held in Boggs v. Curtin, 10 S. & R. 211, 213."

In Conklin v. Conway, 18 Pa. 329, 330, we read: "The act of assembly declares all bets on horse-racing void. Hence, money delivered to a stakeholder on such a bet is delivered on a void contract, and the title to the money is not thereby changed, and the stakeholder has no right to deliver it to the winner."

"*In pari delicto* is not a maxim of universal application; for where money has been paid on a contract which is illegal, merely because it is in violation of a rule which has for its object the protection of weak and necessitous men, it may be recovered back, and for the very reason that the rule itself would be frustrated by any other construction:" McAllister v. Hoffman, 16 S. & R. 147, 148.

In Waters v. Hixenbaugh's Admin'rs, 25 Pa. 131, the plaintiff and the defendant's intestate had some dealings together, the plaintiff having done harvest work for the intestate, and he owed the plaintiff $5.68. The intestate made a bet with the plaintiff for double that sum, payable if W. J. Johnson was re-elected Governor of Pennsylvania, and gave his note to the plaintiff in double the amount of the wages. The plaintiff won the bet and sued for

his original cause of action. The court below was of the opinion that betting the debt barred the right of action for it. The Supreme Court held that in one event that would be enforcing the bet, and in another it would be letting the loser of the bet win it. It held that the plaintiff could not avail himself of his illegal note to recover, as it was a void contract, but he did not forfeit what already was in the hands of the losing better. And the court below was reversed.

In Rainsburg Borough *v.* Fyan, 127 Pa. 74, a bond given by the borough in violation of the law could not be sued upon to recover its face value of $500, because the contract was unlawful, but, as the borough received the money and applied it to a valid indebtedness, it was liable on an implied contract for money had and received. The plaintiff, therefore, did not require the aid of an illegal contract in order to recover, nor do we think the plaintiffs in this case need the aid of an illegal contract, because the statement of claim does not show upon its face that an illegal contract was made.

2. As to the rule for judgment for want of a sufficient affidavit of defence.

Ordinarily, a defendant is entitled to an opportunity to file a supplemental affidavit of defence to the averments of fact in the statement of claim within fifteen days after a question of law has been decided against him. This is provided in section 20 of the Practice Act of May 14, 1915, P. L. 483, 486, but that provision of the statute implies that the question of law is raised before the reply is made to the merits and not at the same time that the reply is made to the merits or after the reply has been made to the merits. "One who seeks to avail himself of technical objections to pleadings must do so at the earliest opportunity. He cannot be permitted by those pleadings to raise an issue on the merits of the case and thereafter to attack the sufficiency of the opponent's pleadings. . . . The filing of the affidavit of defence to the plaintiff's statement of claim was an abandonment of the defendant's right to attack the regularity or sufficiency of the statement:" Boyle *v.* Breakwater Co., 239 Pa. 577. And we do not think, under the circumstances of this case, that the defendant should be afforded another opportunity to file another affidavit of defence when he has already filed an affidavit of defence covering every paragraph of the plaintiffs' statement. We will, therefore, proceed to dispose of the rule in this case for judgment for want of a sufficient affidavit of defence.

The affidavit of defence undertakes to meet *all* the material averments in the plaintiffs' statement of claim simply by saying "the third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh paragraphs of the plaintiffs' statement of claim are denied." This stands on all fours with the case of Fulton Farmers Ass'n *v.* Bomberger, 262 Pa. 43, and must be controlled by it. There the language of the affidavit of defence was: "The statement of facts as set forth in paragraph ———— of statement is denied," and it was declared insufficient. The third paragraph of the affidavit of defence is no more effective than the second. It fails to show how "Cassie Fritz is indebted to the defendant," or how such indebtedness may be set off against the joint claim of herself and her husband. As the affidavit of defence undertakes to answer all averments of fact in the plaintiffs' statement of claim, we know of no good reason why an opportunity should be afforded to file another one concerning the same averments of fact.

The question of law is decided against the defendant, and the rule for judgment for want of a sufficient affidavit of defence is made absolute, and the prothonotary is directed to assess the damages and enter judgment accordingly.

From M. M. Burke, Shenandoah, Pa.