## National Recovery Systems v. Nemchik

24

*Melvin Rubin*, for plaintiff.
*Thomas J. Feeney*, for defendant.

KEELER, *J.*, July 2, 1982—Plaintiff, National Recovery Systems, a New York corporation located in New York City, N.Y., filed suit in assumpsit on February 25, 1980 against defendant, Paul Nemchik, an adult individual who resides at 53 Briarcliff Road, Glenolden, Delaware County, Pa. The action was brought by plaintiff to collect the proceeds of a $5,000 loan which defendant refused to repay.

The evidence presented at the trial consisted of the testimony of Allyn Ehrlich, president of plaintiff corporation and certain documentary evidence which was presented by him. Initially, defendant appeared at the trial. However, during the course of the trial, defendant left the court room and failed to return. He presented no testimony and no evidence during the course of the proceeding.

The uncontradicted testimony of Mr. Ehrlich was that plaintiff is a corporation engaged in the business of rendering advice to hotel-casinos world-wide. Additionally, plaintiff collects debts owed to casinos as an assignee of their claims. He further testified that plaintiff, in the course of its business, through its president, Mr. Ehrlich, set up the casino credit and collection system for the MGM Grand Hotel-Casino of Las Vegas, Nevada (hereinafter Hotel-Casino), which adopted and put its system into use. Pursuant to that system, those who seek to borrow

money or establish a line of credit with the Hotel-Casino submit applications in advance for credit or loans, so that it may check their credit before making the loan or granting the line of credit. On the basis of the information provided by potential borrowers and through various modes of credit checks which it performs on its own, the Hotel-Casino either grants or refuses to extend credit.

Defendant submitted an application for credit with the Hotel-Casino before April, 1975. This application for credit was approved. In April, 1975, defendant engaged in a series of transactions through which he borrowed $5,000 from the Hotel-Casino. To date, he has failed to repay the debt. The transactions were evidenced by a series of three "counter-checks" or "markers" executed by defendant and totaling $5,000. These instruments contained blank spaces for the signatory to fill in the name of his or her bank, the bank's branch or location and the signatory's bank account number. The counter-checks also contained blank spaces which allowed the signatory to insert the date, the amount and his or her signature. They contain the words "Pay to the Order of" followed by a blank space. Just above the space provided for the signature, the counter-checks state:

I represent that I have received cash for the above amount and that said amount is on deposit in said bank or trust company in my name, is free from claims and is subject to this check.

The counter-checks executed by defendant were filled in only as to amount and signature.

At trial, plaintiff's president testified that he helped design the bookkeeping system used by the Hotel-Casino. He testified that the system which he designed was used in the daily operation of the

Hotel-Casino and in the specific transaction entered into between defendant and MGM Grand Hotel-Casino in this case. He also indicated that in plaintiff's normal course of business it receives original counter-checks or markers such as those used in the transaction in question from the Hotel-Casino.

With respect to the method of collection, Mr. Ehrlich testified that the Hotel-Casino extends a reasonable time, which is defined as 90 days or more, for borrowers to repay their debts under the system. In addition, he noted that in the normal course of business, plaintiff receives copies of ledger cards from the Hotel-Casino which it uses pursuant to that system. Mr. Ehrlich also indicted that in September of 1977, he had a telephone conversation with defendant to discuss his failure to repay the $5,000 which he had borrowed. During the course of their telephone conversation, defendant told Mr. Ehrlich that he had problems paying the debt. Plaintiff's president testified:

He (Defendant) admitted that he had (signed) them, he knew what they (the markers) were, and his only problem was that he did have a personal problem where he was . . . tapped out or in bad financial problems. So, therefore, he asked us to be patient and he did want to pay this, go back out there. He had been there many other times, he really enjoyed it, he had good times out there and he wanted to pay this debt, get it over with so he could go back out there.

Mr. Ehrlich testified that he had agreed to wait for a short period of time for defendant to pay the debt, but that defendant never repayed it.

At trial, plaintiff introduced into evidence a ledger card describing defendant's loan transactions and his failure to repay them. Plaintiff also offered three

counter-checks signed by defendant. The only other piece of documentary evidence introduced by plaintiff was the written assignment of the claim from Grand Resorts, Inc. to plaintiff corporation. Mr. Ehrlich testified that this assignment was executed by the Executive Vice-President of MGM Grand Resorts, Inc. All five of plaintiff's exhibits were admitted into evidence by the trial judge.

On April 30, 1982, the court filed its adjudication and entered a verdict in favor of plaintiff, National Recovery Systems and against defendant, Paul Nemchik, in the amount of $5,000. The court found that the Hotel-Casino had assigned its claim against defendant to plaintiff, National Recovery Systems, prior to the institution of suit in this matter. The court also found that plaintiff presented evidence of the existence of the debt by producing business records which were admitted into evidence pursuant to the Uniform Business Records as Evidence Act and the Uniform Photographic Copies of Business and Public Records as Evidence Act. Additionally, the court found that plaintiff had produced sufficient evidence of the existence of the debt through the oral testimony of Allyn Ehrlich concerning defendant's admission of the existence of the debt. On May 12, 1982, plaintiff filed exceptions to this adjudication. Plaintiff filed an additional exception on June 2, 1982.

Before reaching the merits of plaintiff's exceptions, we must deal with a procedural irregularity in this case. The Pennsylvania Rules of Civil Procedure provide that the decision of the court in a case heard without a jury shall be filed with the prothonotary, who shall notify all the parties or their attorneys of the date of filing: Pa.R.Civ.P. 1038. See also Pa. R.Civ.P. 236. Rule 1038 provides:

Within ten (10) days after notice of the filing of the decision, exceptions may be filed by any party to the decision or any part thereof, to rulings on objections to evidence or to any other matters occurring during the trial period. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to final judgment, leave is granted to file exceptions raising these matters. No motion for a new trial, for judgment non obstante veredicto, in arrest of judgment or to remove a nonsuit may be filed.

Pa.R.C.P. 1038(d). Thus, failure to file exceptions within ten days following the prothonotary's notice precludes the party from challenging the court's decision: Gibson v. Miller, 265 Pa. Superior Ct. 597, 402 A. 2d 1033 (1979); Blake v. Mayo Nursing and Convalescing Home, Inc., 245 Pa. Superior Ct. 274, 369 A. 2d 400 (1977); Frankel v. Reliance Mutual Life Insurance Co., 199 Pa. Superior Ct. 295, 184 A. 2d 305 (1962).

In the instant case, defendant filed an additional exception over 30 days after the court filed its adjudication and the office of judicial support sent its notice. At oral argument, defendant offered no explanation for its failure to comply with this procedural nicety. Therefore, defendant could be procedurally barred from challenging the court's adjudication with respect to this additional exception. Nevertheless, after having dealt with this technical irregularity, we reach the merits of all the exceptions filed by defendant in this case.

## I. STATUTE OF LIMITATIONS

Defendant contends that the court failed to apply the correct legal principles in regard to whether or

not the statute of limitations barred this claim. Indeed, Pennsylvania Statutes express a preference for barring foreign claims under the statute of limitations. See 42 Pa.C.S.A. §5521 (1981) (Borrowing Statute). Pennsylvania's law with respect to foreign claims provides that: "The period of limitation applicable to a claim accruing outside this Commonwealth shall be that provided or prescribed by the law of this Commonwealth, whichever first bars the claim." Id. The application of this statute assumes that defendant has properly met the procedural requirements in his pleadings.

In the present case, defendant failed to plead the Pennsylvania Statute of Limitations as an affirmative defense in the action. This constitutes a waiver of that defense: Pa.R.Civ.P. 1032. However, defendant asserted in his new matter that, "Defendant avers that he believes the Laws of the State of Nevada concerning limitation of action also bar Plaintiff's (sic) and MGM Grand Hotel from recovery." This statement is ambiguous at best. Despite the ambiguity, the court gave defendant the benefit of the doubt and treated this element of the new matter as a proper pleading of the Nevada Statute of Limitations. The applicable Statute of Limitations in Nevada bars all actions on oral contracts not brought within four years: Nev. Rev. Stat. 11.190 (2)(c) (1979). This particular statutory provision would be applicable in this action through the previously mentioned "Borrowing Statute." See Pa. C.S.A. §5521 (1981). But,

The effect of the borrowing statutes is not to extend the procedural law of one state into another, but the borrowing state adopts and makes as its own (special statute of limitations) the statute of the other.

But when such statute is so borrowed, it is not wrenched bodily out of its own setting, but taken

along with it are the Court decisions of its own state which interpret and apply it, and the companion statutes which limit and restrict its operation: Devine v. Rook, 314 S.W. 2d 932, 935 (Mo. App. 1958).

A review of the Limitation of Actions chapter of Nevada's Statutes reveals that provision is made for a situation such as the one at bar. The statutes provide that the absence of a person from Nevada suspends the running of the Statute of Limitations: Nev. Rev. Stat. 11.300 (1979). However, case law has modified the applicability of the statutes and the courts have found that time is not suspended as to persons who may be liable to service of process: Simmons v. Trivelpiece, _____ Nev. _____, 643 P. 2d 1219 (1982) (Action in Rem); Brown v. Vonsild, 91 Nev. 646, 541 P. 2d 528 (1975) (Action in Personam); Bank of Nevada v. Friedman, 82 Nev. 417, 420 P. 2d 1, (1966) (Action in Personam). See also Dedmon v. Falls Products, Inc., 299 F. 2d 173 (5th Cir. 1962) ("The true test of the running of the statute of limitations is the liability of the party invoking its bar to the service of process during the whole of the period prescribed"). Federal Courts sitting in Pennsylvania and applying the Pennsylvania Borrowing Statute have also found that sister states' suspension provisions are inapplicable where a non-resident individual is amenable to service of process under a statutory provision authorizing substituted service: Mangene v. Diamond, 132 F. Supp. 27 (E.D. Pa. 1955) aff'd., 229 F. 2d 554 (3d Cir. 1956); Karagiannis v. Shaffer, 96 F. Supp. 211 (W.D. Pa. 1951). This court has dealt with this question similarly: Hornsey v. Jacono, 12 D. & C. 2d 291 (1957) (Opinion by Toal, J.).

These cases are readily distinguishable from the case sub judice. In all the previously enumerated

cases, defendant was subject to service of process under the state law where the cause of action arose. Here, however, the Nevada long-arm statute is not sufficiently "long" to render defendant in this case liable to service of process. See Nev. Rev. Stat. 14.065 (1979). (Personal service on party outside state). Indeed, the record clearly indicates that defendant told Mr. Ehrlich that he wanted to return to Nevada but that he would not until he paid his debt. In addition, defendant presented no evidence whatsoever that he was other than a resident of the Commonwealth of Pennsylvania either today or at the time he submitted an application for credit at the Hotel-Casino in 1975. Thus, defendant was not liable to Nevada service of process and the suspension provision of the Nevada Statute of Limitations applies in this case. Therefore, this action is not barred by the Nevada Statute of Limitations.

## II. THE GAMBLING DEBT ISSUE

Defendant also took exception to the court's conclusion that the present action was not brought to enforce a gambling debt. Defendant contends plaintiff's claim is based upon a gambling debt and is therefore unenforceable. See 73 Pa.C.S.A. §2031 (1981) (Gaming contracts to be void). See also West Indies, Inc. v. First National Bank, 67 Nev. 13, 214 P. 2d 144 (1950) (adoption of common law rule of unenforceability of gambling debts). The evidence presented at trial does not support defendant's position.

The uncontradicted testimony was that once defendant signed a marker, he was given cash. Defendant was then free to leave the premises of the Hotel-Casino if he so desired. Exhibits P-2 through P-4 also stated on their face that defendant received cash in exchange for the marker. Accordingly, no

testimony, even if proffered by defendant, would have been permitted to contradict the fact that defendant received the proceeds in cash. See Keleher v. LaSalle College, 394 Pa. 545, 147 A. 2d 835 (1959). Defendant provided no evidence that he tendered his marker while involved in a specific gambling transaction. Pennsylvania case law indicates that where a loan in a specific transaction did not arise out of a bet and was independent of a specific gambling transaction, then, the loan is enforceable. "The test whether a demand is capable of being enforced at law is, whether the Plaintiff requires the aid of the illegal transaction to establish his case." Scott v. Duffy, 14 Pa. 18, 20 (1850). See also Wolpert v. Knight, 74 Nev. 322, 330 P. 2d 1023 (1958); Craig v. Harrah, 66 Nev. 1, 201 P. 2d 1081 (1949).

The Wolpert case is instructive in this regard. In Wolpert, defendant issued a series of five $500 checks to plaintiff who ran a bar and gambling establishment in Ely, Nevada. The initial four transactions executed by defendant involved the exchange of defendant's check for cash. The court found that these transactions were enforceable. The fifth and final transaction involved an exchange of defendant's check for gambling chips. The court held that this final transaction created a debt which was incurred specifically for gambling purposes and that this debt was therefore unenforceable: Wolpert, supra. The situation in the case at bar is analogous to the initial four transactions in Wolpert.

It is obvious that the court's finding that plaintiff's claim is not grounded upon a gambling transaction is, by its very nature, a factual determination of the judge sitting as the finder of fact. The findings of a trial judge sitting without a jury carry the same weight as a jury verdict: Denby v. North Side Carpet

Cleaning Co., 257 Pa. Superior Ct. 73, 390 A. 2d 252 (1978); Floravit v. Kronenwetter, 255 Pa. Superior Ct. 581, 389 A. 2d 130 (1978). Therefore, defendant's assignment of error in this regard is in essence a contention that the trial court's verdict was against the weight of the evidence and therefore a new trial should be granted. The Supreme Court has stated in this regard:

We have frequently set forth the standards governing the grant of a new trial on the ground that the verdict was against the weight of the evidence. The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion.

Burrell v. Philadelphia Electric Co., 438 Pa. 286, 288-89, 265 A. 2d 516, 517 (1970) quoting Austin v. Ridge, 435 Pa. 1, 4, 255 A. 2d 123, 124 (1969). In this particular case, lack of any evidence to contradict plaintiff's witness' testimony precluded the court from finding that defendant's debt was based upon a gambling transaction.

## III. ADMISSION OF DOCUMENTARY EVIDENCE

Defendant took exception to the court's ruling on the admissibility of Exhibits P-1 through P-4. Defendant argues that these documents were admitted into evidence without a proper foundation and without proper verification.

Defendant's contentions are without merit. At trials plaintiff's president testified at length with respect to his familiarity with the preparation and maintenance of the records in question. In fact, the witness testified that he helped design the system

which gave rise to these documents. On the basis of this testimony, the court determined that the witness provided sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness and to offset the hearsay character of the evidence: Indyk's Estate, 488 Pa. 567, 413 A. 2d 371 (1979). See also Uniform Business Records as Evidence Act, 42 Pa.C.S.A. §6108 (1982). Further, the trial court determined that the witness possessed adequate knowledge of the regularity of the record-keeping process to qualify the challenged records for admission into evidence: Indyk's Estate, supra.

Exhibit P-1, a photocopy of a ledger card, was ruled admissible by the trial court under the provisions of the Uniform Photographic Copies of Business and Public Records as Evidence Act: 42 Pa. C.S.A. §6109 (1982). Plaintiff's witness testified to the court's satisfaction that P-1 was an accurate copy of the original and that the photocopy was kept in the regular course of business by plaintiff. No evidence was presented by defendant to deny or contradict any of the testimony by plaintiff's witness concerning the sources of information, the method and time of preparation, or the preservation of the documents in question. The documentary evidence was therefore properly admitted.

## IV. AUTHENTICITY OF DEFENDANT'S SIGNATURE ON THE MARKER

Defendant excepted to the court's conclusion of law that the signatures on Exhibits P-2, P-3 and P-4 were presumptively genuine. However, these documents are negotiable instruments within the meaning of Article III of the Uniform Commercial Code. See generally, 13 Pa.C.S.A. §3101 et seq. (1982).

The instruments in question contain: an unconditional order to pay a sum certain in money; no other promises; are payable on demand; and, are payable to the bearer. See 13 Pa.C.S.A. §3104 (1982).

The documents also bore a signature which was purported to be that of defendant. The Uniform Commercial Code provides that when the effectiveness of a signature is put into issue, the signature is presumed to be genuine: 13 Pa.C.S.A. §3307(1)(b) (1982). Defendant provided no testimony to rebut this presumption.

In addition, Mr. Ehrlich testified that defendant admitted that he had signed the markers. This statement, although hearsay, is admissible since it constitutes a party admission which is an exception to the hearsay rule. See M. Brown, Pennsylvania Evidence at 132 (1949). Again, defendant provided no evidence to contradict plaintiff's witness's testimony.

Either one of these two grounds alone would support the factual determination that the signatures on the markers were defendant's. The record developed at trial could support no other finding.

## V. DISMISSAL OF PLAINTIFF'S WITNESS

Defendant took exception to the court's dismissal of plaintiff's witness prior to the close of plaintiff's case. In retrospect, Mr. Ehrlich was the only witness in the case. At the close of plaintiff's direct examination of the witness, plaintiff's counsel offered the witness to defendant's counsel for cross examination. Defendant's counsel indicated that he had no questions. Subsequently, plaintiff's counsel requested the court to excuse Mr. Ehrlich when it appeared that the case would be continued until the next day in order to determine whether defendant had been

subpoenaed. Defendant's counsel objected. The court requested an explanation for this objection. Defense counsel stated, "Because a question or two might occur to me if he is going to queston Mr. Nemchik (the Defendant) . . . " The court indicated that this explanation was insufficient and asked, "What questions, for example, do you think you might have to ask of him (Mr. Ehrlich)?" Defense counsel replied, "I don't know. It depends on what he (Plaintiff's counsel) asks Mr. Nemchik." The court then excused the witness.

Defendant was offered substantial opportunity to cross-examine the witness. He simply chose not to take advantage of those opportunities. Defendant's counsel offered no reasons why the witness should not be excused. Certainly the court has discretion to dismiss a witness when defendant's counsel could offer no justification to support his inexplicable demand for wanting the witness to remain. See Williams v. Philadelphia Transp. Co., 415 Pa. 370, 203 A. 2d 665 (1964) (Dicta.)

Assuming *arguendo* that defendant's counsel properly objected to the dismissal since defendant had not yet testified, the rationale for the objection was mooted by defendant's failure to take the stand. In light of the above, the court properly exercised its discretion in dismissing plaintiff's witness.


## VI. INFERENCES DRAWN FROM DEFENDANT'S FAILURE TO TESTIFY

Defendant contends that the court drew conclusions from defendant's failure to testify. Defendant did not take the stand to contradict the testimony of plaintiff's witness, Mr. Ehrlich, that defendant had admitted the existence of the debt and had agreed to pay it. It is well established that "where evidence

which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the . . . (fact finder) may draw an inference that it would be unfavorable to him." Beers v. Muth, 395 Pa. 624, 151 A. 2d 465 (1959) quoting Wills v. Hardcastle, 19 Pa. Superior Ct. 525 (1902) (jury trial). Clearly the court would have been fully justified in inferring that defendant's testimony, had he taken the stand, would have been unfavorable. However, the court did not need to resort to this inference in order to make its findings. The court's factual determinations are all fully supported by the record developed at trial. The fact that plaintiff failed to subpoena defendant is of no moment in this regard, as the cases draw no distinction between situations where the party was available of his own violation and when the party was available pursuant to a subpoena. Defendant's contention is meritless.

## VII. THE ASSIGNMENT TO THE PLAINTIFF

Defendant's additional exception, alluded to previously, questions whether plaintiff has established itself as the real party in interest. See Pa.R.C.P. 2002. In the case before us, plaintiff filed of record not only the original markers, but also the original assignment of the claim. Plaintiff thus filed the best evidence of its title, the original assignment itself. "They were not required to set out this assignment verbatim or attach a copy of the assignment as an exhibit to their pleadings. It would have been sufficient if they had stated the fact and date of the assignment and the parties thereto." Brown v. Esposito, 157 Pa. Superior Ct. 147, 149, 42 A. 2d 93, 94 (1945). Defendant further contends that the

38

assignment is defective because the assignor is denominated as Grand Resorts, Inc. instead of MGM-Grand Hotel of Las Vegas, Nevada. This contention ignores the uncontradicted testimony of Mr. Ehrlich who stated that the assignment was executed by Mr. Campbell, the Executive Vice President of MGM-Grand Resorts, Inc. The presentation of the original assignment, the original counter-checks and the testimony of Mr. Ehrlich clearly demonstrates that plaintiff was the assignee of the debt and is therefore the real party in interest.

## VIII. CONCLUSION

Excluding defendant's exception relating to the statute of limitations, even if all or any of the contentions asserted by defendant in his exceptions were meritorious, it would be of no consequence since the admission by defendant that he owed the money and his agreement to repay it was sufficient to establish a prima facie case by plaintiff: Anderson v. Best, 176 Pa. 498 (1896); Peters' Estate, 20 Pa. Superior Ct. 223 (1902).

The court feels now as it did at the time of trial that its determinations both factually and legally were appropriate and proper.