## Spector v. Bonwit Teller & Company.

*Landlord and tenant—Termination of lease—New lease—Ambiguous contract.*

1. Where a tenant in possession of premises under a lease terminating on Jan. 31, 1928, executes a new short-term lease for the premises, which provides that the lessee shall not be entitled to remain in possession of the premises after Jan. 31, 1928, unless he shall notify the lessor not later than Oct. 31, 1927, that a certain building which he is erecting for occupancy will not be completed on Feb. 1, 1928, and the lessee serves notice Nov. 29, 1927, that the building will not be completed March 1, 1928, the lessor will be entitled to possession on Jan. 31, 1928, as the new lease never came into effect, and this is so although the new lease contains a provision that it shall in no event extend beyond April 30, 1928, and that it expires absolutely and without notice on that day.

2. The lessee cannot, in such case, contend that without any notice whatever the lease was to terminate on April 30th, and that notice was only necessary if he desired to end it on an earlier date when his new building was completed. Without the notice specified, the new lease never went into effect.

3. Where the language of a contract is susceptible of more than one construction, it should be construed in the light of the circumstances surrounding it at the time it was made; and it is the duty of the court to place itself, as nearly as may be, in the situation of the parties at the time, so as to view the circumstances as they viewed them.

Petition for a declaratory judgment under Act of June 18, 1923, P. L. 840. C. P. No. 5, Phila. Co., Dec. T., 1927, No. 3839.

*Sundheim, Folz & Sundheim,* for respondent.

*Wolf, Block, Schorr & Solis-Cohen,* for petitioner.

ALESSANDRONI, J., Jan. 27, 1928.—This is a proceeding to determine the rights of the respective parties to a lease under the Uniform Declaratory Judgments Act.

Maurice Spector, the petitioner, is the owner of premises situate at the southwest corner Thirteenth and Chestnut Streets, Philadelphia, now occupied by Bonwit Teller & Company under and by virtue of a lease beginning Feb. 1, 1923. Bonwit Teller & Company has for a number of years conducted a dry goods and ladies' wear business on a large scale at the southwest corner Thirteenth and Chestnut Streets. Maurice Spector, who was engaged in the same kind of business on Chestnut Street, between Thirteenth and Broad Streets, purchased in the spring of 1927 the building occupied by the respondent, which attorned to him, remaining in possession as the tenant of Maurice Spector under and by virtue of a lease beginning Feb. 1, 1923, and terminating Jan. 31, 1928. Meanwhile, the respondent, anticipating the termination of this lease on Jan. 31, 1928, arranged for the erection of a new home for its business at the southwest corner Seventeenth and Chestnut Streets, Philadelphia. The petitioner made manifest his intention to occupy the premises southwest corner Thirteenth and Chestnut Streets immediately at the expiration of the lease on Jan. 31, 1928. The respondent was willing to surrender possession at that time. There was, however, an element of uncertainty as to the date of completion of the new Bonwit Teller & Company Building at Seventeenth and Chestnut Streets. Both parties recognizing the necessity of some adequate provision to safeguard the interests of each other, in view of this uncertainty and manifesting a commendable spirit of reciprocal regard for each other's interests, on May 21, 1927, entered into a short-term lease, which by its terms was not to extend beyond April 30, 1928.

The petitioner has requested the court to say whether or not, under the terms of that lease, the respondent is entitled to remain in possession after

Spector *v.* Bonwit Teller & Company.

Jan. 31, 1928. The petitioner contends that, under the plain language of paragraph 39 of the said lease, the respondent should surrender possession on Jan. 31, 1928. The respondent contends that it is entitled to remain in possession beyond that date; indeed, until April 30, 1928, at its option.

Paragraph 39 reads as follows:

"39. It is understood and agreed that this lease shall (anything herein contained to the contrary notwithstanding, and any law, usage or custom to the contrary notwithstanding) terminate at twelve o'clock noon March 31, 1928, unless prior to December 31, 1927, lessee shall serve upon the lessor in writing a notice stating that the building now being constructed for the lessee at Seventeenth and Chestnut Streets, Philadelphia, will not be ready for total occupancy by the lessee on the first day of April, 1928; and it is further agreed that this lease shall likewise terminate at noon on the 29th day of February, 1928, unless lessee shall serve upon the lessor a like notice in writing not later than November 30, 1927, that said building at Seventeenth and Chestnut Streets, Philadelphia, will not be ready for total occupancy on the first day of March, 1928; and it is further agreed that the lessee shall not be entitled to remain in possession of the premises herein demised after January 31, 1928, unless the lessee shall deliver a like notice in writing to the lessor not later than October 31, 1927, that the said building at Seventeenth and Chestnut Streets, Philadelphia, will not be ready for total occupancy by the lessee on the first day of February, 1928."

The respondent urges that paragraph 38 of the lease should be read in conjunction with paragraph 39. Paragraph 38 provides:

"38. It is understood and agreed that this lease shall in no event extend beyond April 30, 1928; it is further understood and agreed that notwithstanding any law, usage or custom to the contrary, this lease expires absolutely and without notice on the 30th day of April, 1928, and any holding over after said date by lessee shall constitute it a trespasser upon said premises."

It is the contention of the respondent that this lease was to terminate on April 30, 1928, and that it should have the option of terminating it at an earlier date if the new building should be ready for total occupancy at the end of any prior month, and, accordingly, paragraph 39 of the lease provides that, despite any other provision in the lease, the tenancy should be determined by the lessee, at its option, at the end of any month within the ninety-day term, provided lessee gave to the lessor a written notice; that without any notice whatsoever from the respondent, the lease should expire on April 30, 1928; and under paragraph 39, upon lessee giving a certain notice at certain specified times, the lease should end at certain specified earlier dates, or should not come into existence at all if notice was given early enough.

Another contention of the respondent is that the language of paragraph 39 is ambiguous and unintelligible, and not reflective of the intention of the parties at the time of the execution of the lease.

Pursuant to this view, the respondent did not send a notice to the petitioner on or before Oct. 31, 1927, to the effect that the said building at Seventeenth and Chestnut Streets, Philadelphia, would not be ready for total occupancy by the lessee on the 1st day of February, 1928. The only notice sent by the respondent to the petitioner was that of Nov. 29, 1927, to the effect that the building under construction at Seventeenth and Chestnut Streets, Philadelphia, would not be ready for total occupancy by it on the 1st day of March, 1928, etc. This notice followed a letter dated Nov. 18, 1927, by Maurice Spector to Bonwit Teller & Company, advising the respondent that he,

Spector v. Bonwit Teller & Company.

Maurice Spector, would expect delivery of possession of the premises on Jan. 31, 1928, in view of the failure of the respondent to serve notice upon the petitioner on or before Oct. 31, 1927, that the premises southwest corner Seventeenth and Chestnut Streets would not be ready for occupancy on Feb. 1, 1928.

We are, therefore, to consider whether or not clauses 38 and 39 of this lease clearly evince the intention of the parties without recourse to matters not appearing therein outside of the lease itself. We are of opinion that they do. Whatever may be said of the grammatical form of paragraph 39—and it may leave something to be desired in that regard—it is, nevertheless, susceptible of no other interpretation than that the lessee was bound to give notice to the lessor not later than Oct. 31, 1927, that the new building would not be ready for total occupancy by the lessee on the 1st day of February, 1928. This was not done. Upon the performance of this condition depended the right of the lessee to remain in possession after Feb. 1, 1928, as well as the exercise of the privilege of remaining for the two succeeding periods provided for the accommodation of the lessee. An ordinary perusal of this paragraph will show that its terms were arranged for the mutual benefit of the parties. The petitioner, on the one hand, wanted possession on Jan. 31, 1928, and wanted no delay after that date if the respondent was ready to go into its new building on Feb. 1, 1928. The respondent, on the other hand, provided for its release from payment of rent and heavy carrying charges as soon as it was evident to it that its new building would be ready for occupancy at any time before April 30, 1928. The knowledge of the anticipated readiness of the new building for occupancy lay exclusively in the mind of the respondent, and, to that degree, the petitioner was dependent upon the respondent for that valuable information. Paragraph 38 is not in anywise inconsistent, repugnant or contradictory of the provisions of paragraph 39. It is a definite expression of the intention of both parties that this lease should not extend beyond April 30, 1928.

The respondent has cited a number of authorities which we find not inconsistent with the principle of law covering the construction of these two paragraphs.

It is well established that where the language of a contract is susceptible of more than one construction, it should be construed in the light of the circumstances surrounding it at the time it is made; and that it is the duty of the court to place itself, as nearly as may be, in the situation of the parties at the time, so as to view the circumstances as they viewed them.

We cannot agree with the respondent that the language of the paragraphs in question is susceptible of more than one construction, or that the intention of the parties is not clearly disclosed.

The Supreme Court, in the case of Gianni v. Russell & Co., Inc., 281 Pa. 320, reiterating its pronouncement in Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287, stated:

" 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.'

"In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent, the chief and most satisfactory index . . . is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with

at all in the writing. If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation:' 5 Wigmore on Evidence (2nd ed.), 309."

And now, to wit, Jan. 27, 1928—

*(a)* The court construes the disputed clauses of the lease in question to mean that the term intended to be created by the agreement of May 21, 1927, did not come into effect or being, and that it is the duty of the respondent to vacate and deliver up possession of the premises southwest corner Thirteenth and Chestnut Streets, Philadelphia, now occupied by it under the subsisting lease as of Jan. 31, 1928.

*(b)* A declaratory judgment or decree is hereby entered declaring the petitioner to be entitled to undisputed possession of the said premises after Jan. 31, 1928.

*(c)* It is ordered that the respondent pay the costs.